# ELIZA T. GRISWOLD v. GEORGE GEBBIE, ET AL.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued March 28, 1889—Decided May 13, 1889.

[To be reported.]

1. In an action of deceit, the scienter must not only be alleged but proved, and the jury must be satisfied that the defendant made the statement relied upon, knowing it to be false, or with such conscious ignorance of its truth as to make it equivalent to a falsehood.

2. But when the plaintiff in such action has proved that the defendant made a positive statement of a material fact which was relied upon, its falsity, and circumstances tending to show a reckless assertion in conscious ignorance of the fact. he has made a prima facie case, without direct proof of deceitful intent.

126  353
132  439
126  353
165  133
165  540
126  353
197  438
126         353
f 33 SC 1287
126         353
37SC 1265
126    353
141SC3571

3. The general rule that a principal is responsible for the misrepresentations of his agent within his authority, is beyond question; and the better opinion is that as to third parties affected by the agent's acts and words, it is the apparent scope of his authority, not his actual instructions, that must govern.

4. Though a mere misstatement of the quantity of land sold, is not sufficient to prove fraud, yet where the deficiency is very great, and the misstatement is made by advertisement and descriptive circular and repeated twice orally to direct questions of the intended purchaser, and is unexplained by the agent making it, the case is for the jury, though the principal was absolutely ignorant on the subject.

5. The land being suburban, a real estate broker of sixteen years business, who testified that he was familiar with values in the neighborhood; that he had made inquiry at the time of the sale, and had himself bought and sold suburban properties about the same distance away, was competent to testify as an expert; and, there being evidence that in arriving at the price the parties had considered the acreage, the witness's opinion as to the value of the land per acre was admissible.

Before PAXSON, C. J., STERRETT, CLARK, McCOLLUM and MITCHELL, JJ.

No. 105 January Term 1889, Sup. Ct.; court below, No. 276 March Term 1887, C. P. No. 2.

On April 25, 1887, George Gebbie and Mary J. Gebbie, his wife, in right of said wife, brought case for deceit against Eliza T. Griswold. Issue.

At the trial on February 16, 1888, the facts shown upon which the plaintiffs sought to recover were in substance as follows:

William A. Griswold, the husband of the defendant, died in 1881. Desiring to dispose of a country place she owned in her own right, she consulted with a Mr. Strong of New York, her husband's friend and business associate, and at his suggestion her brother-in-law, John W. Griswold, was asked to see a real estate broker and have the place offered for sale. In the spring of 1882, Mr. Griswold called upon one Everly, a real estate broker, and placed the property in his hands for sale. Mr. Everly advertised the property for sale in the city papers, describing it as a "country seat of seven acres" near to Darby station. Mr. Gebbie saw the advertisement and called upon Mr. Everly who showed him photographs and gave him a printed circular in which the property was described in eloquent terms and said

to consist "of nearly seven acres of land." At the interview with Mr. Everly, Mr. Gebbie asked as to the price of the property and was told to go and see it. Accordingly Mr. and Mrs. Gebbie visited Darby and there met John W. Griswold, who showed them over the place, and in a conversation, hereinafter given, told of its acreage. A few days afterward an offer of $24,000 for the place as it stood was made and accepted. The price was subsequently made $23,000, by the omission of a carriage from the purchase, and on May 16, 1882, a contract was signed by which the defendant agreed to sell the property, known as Maple Terrace, including certain articles of personalty, for the price last stated. This contract did not mention the acreage of the place. On June 15, 1882, the defendant met the plaintiffs for the first time, when she executed and delivered her deed to MaryAnn Gebbie, and received $12,000 of the purchase money and a mortgage for the balance. The deed then delivered described the property by courses and distances but did not disclose its acreage. The vendees immediately went into possession.

In March, 1887, a line of the B. & O. R. Co. was run near the front gate of the property, and in the proceedings to assess the damages resulting, a survey became necessary, when for the first time, as was claimed, the purchasers ascertained that while the property was correctly described in their deed, as to courses and distances, the true acreage within the lines was but four and two tenths acres.

Milton C. Work, a witness called for the plaintiffs, testified that at the time of the dispute between the railroad company and Mr. and Mrs. Gebbie, in relation to the assessment of damages, he called upon the defendant and asked her if she remembered the quantity of the land, and she said she did not; that he asked her if she had seen the circular, and she said she had; that he did not think she stated by whom it was prepared, but she said she had given it to parties who talked about buying the property, and her agent also had done so.

George Gebbie, one of the plaintiffs, testified that at his interview with Mr. Everly, he was told that Mr. John Griswold would show him the place:—that if I did not find him there I should find him at the mills in Darby. I went there and found Mr. John Griswold on the lawn of the place. He showed me through the house and through the grounds; and in the gar-

den, I said, " This circular says 'nearly seven acres ;' the advertisement says 'seven acres.' "

Objected to, as to any statement of what passed between the witness and Mr. John Griswold.

By the court: Objection overruled; exception. [5]

Q. Did you exhibit that circular to him? A. No ; I don't think I did. I referred to the circular and the advertisement. I said one said seven acres positively, and the other nearly seven acres. I asked which was correct. He said, " There is rather over than under seven acres." I asked him the value of land in the neighborhood, and he said land was selling there at $2,000 an acre. I referred to the eloquence of the circular; I asked, did he get up that circular, and he said, " Yes."

Mrs. Mary J. Gebbie testified that Mr. Griswold made similar representations to her on the same occasion.

Adam Everly, called by the plaintiffs to testify as an expert to the value of the land, stated in his preliminary examination that he had been in the real estate business for sixteen years, and had bought and sold a large amount of real estate ; was familiar, from his knowledge of the trade, of the value of real estate at Darby in 1882. On cross-examination, he stated that he had not bought or sold property in the neighborhood of the Griswold property within two years either way of 1882 ; that at the time of the sale he had made careful inquiry and found that a sale had taken place at $2,000 per acre in the immediate vicinity, and upon that sale he had based his opinion as to the value of this land ; that he could not recall the name, and had no personal relation to the transaction. To the court he stated that he had been engaged in and was acquainted with sales of rural properties in the neighborhood of Philadelphia, and had sold the Fallon property within a reasonable distance, perhaps six miles from this ; had frequently bought and sold other suburban properties on all the roads in the neighborhood of the city, in every direction, and thought he was competent to speak of values, and was so considered.

Objected to.

By the court: Testimony admitted; exception. [7]

The witness testified that the fair market value for this property per acre in 1882 was $2,000.

The defendant testified that she had not given Mr. Everly

any information about the property, and had not seen him until after the offer was accepted; that she never saw either Mr. Everly's advertisement or the circular, and prior to the beginning of the suit had no knowledge that any representations had been made to Mr. Gebbie with reference to the acreage of the property; that she had heard some member of her family say that her brother-in-law had written a circular descriptive of the property, and that was all she knew about it. She also contradicted the testimony of Mr. Work, and testified that she never had any knowledge of the acreage of the property, and did not know that her husband knew the number of acres; it was her own separate estate.

John W. Griswold was not called.

At the close of the testimony, the defendant's counsel requested the court to charge the jury that under all the evidence in the case the verdict should be for the defendant.[1]

This point, the court, HARE, P. J., declined, and charged the jury as follows:

After Mrs. Griswold had put the matter in Mr. Strong's hands, he had a conversation with John Griswold, in which John Griswold suggested the propriety of employing Adam Everly, who was a real estate broker, to effect the sale. Mr. Strong had an office here, but his residence was in New York, and did not find it convenient to attend to the business himself. He therefore assented readily to John Griswold's idea, and gave him a more general authority, because he said, "Employ two or three brokers if necessary," and from that time forth he dismissed the same from his mind, or at least took no further steps in regard to it, as Mrs. Griswold had, as she declares, dismissed it from her mind.

John Griswold then proceeded, in the execution of this power, to call upon Mr. Everly and to acquaint him with the situation of the property, giving him a circular which he had prepared, which contained a minute account of the property, among other things stating in explicit terms that the ground contained seven acres.

One of the questions in this case may be as to John Griswold's authority to do this much. It is not denied by the defendants, indeed it is a part of their case, or at least of their

Charge of Court below.

testimony, that John Griswold was authorized to take whatever steps were necessary, or to employ a real estate agent, to effect the sale ; but it does not necessarily follow that an authority to select a real estate agent to bring about a sale will authorize the agent to take measures to effect such sale. At the same time, when a man is employed to do a thing, it is generally implied, or may be so, that he is to do what is requisite to render his employment effectual, and, without stating any proposition of law, [it is a question for the jury to consider whether, if a man is told to select a real estate agent and to employ him to sell a piece of property, that does or does not carry with it the duty to give a description of the property to the person so employed.] [2] To some extent it would seem to be so, because he must necessarily say where the property is situated, as, for instance, whether it is in the town or the country. It would not do to call upon a broker, and say, " I want you to sell a house," without saying where the house was. Some description, therefore, must be given, and the doubt is as to the extent. I suppose it is a matter of inference or for consideration by the jury, whether a person who is authorized to select a broker and employs him to sell a house, may not state the number of stories, whether it is of brick or stone, and give him some general idea, because otherwise the broker would be comparatively uninformed of what might be material for him to know, in negotiating the sale. I do not say that this would be necessary, because, after the broker had been told where the buildings were, he might look for himself ; but on the other hand, I certainly do not mean to tell the jury that a right to give some description of the property might not exist. Mr. John Griswold certainly interpreted his authority in the largest sense.

As I have already said, he gave the broker a minute description of the house, containing this more or less material fact, that the ground was seven acres, and Mr. Everly, putting his interpretation upon the information he had received from Mr. Griswold, as coming from a person duly authenticated by the family, proceeded to advertise the property in the newspapers as a property of seven acres.

That advertisement brought the plaintiff in this case, Mr. Gebbie, acting for himself and his wife, to Mr. Everly's office,

and Everly handed the circular to Mr. Gebbie as containing such information as he had received, at the same time telling Mr. Gebbie that, if he would go to the property that afternoon, he would find Mr. John Griswold there ready to receive him and to show him whatever was to be seen.

Now, it has been said, and with some truth, that information given by a seller, or his agent, through an advertisement in the newspapers, or even a circular prepared for the purpose of being exhibited to purchasers, is not always to be regarded by buyers, if they are reasonably cautious, as containing the exact truth. Men habitually praise what they are going to sell. I think that statements which exceed the bounds of truth, and relate to material facts, ought to be avoided ; but in all such cases there are two questions : first, did the seller say what was not true ? and next, did the buyer rely upon what he said ?

It may be, although I am not asked to express an opinion upon it, and do not as a matter of law, that if this were all, it would not have been enough, although I do not say so. [When, however, the purchaser, Mr. Gebbie and his wife, met Mr. John Griswold that afternoon, they showed, to some extent, that they understood that advertisements or circulars are not always to be relied upon, because they proceeded to question him explicitly, and agreeably to the lady's testimony, which seemed to me to be candid, she asked : " Does this property contain the seven acres spoken of ? " To which he replied : " More, rather than less." While walking around the premises with Mr. Griswold, the question was again asked by Mr. Gebbie, and answered in the same way. What followed was that the Gebbies agreed to give $24,000, which was subsequently reduced to $23,000 by the withdrawal of a carriage.] [3]

It was at this stage of the negotiations that Mrs. Griswold was apprised of the offer, and agreed to accept it. When she ratified the sale by Everly, she accepted him as her agent, even if he were not such previously; but as it is not denied by the defendants that he was empowered, that is not a material question, as it might otherwise have been. Mrs. Griswold and Strong met the purchasers at the office of the conveyancer, to whom the title-papers were handed over by Mr. Everly, Mrs. Griswold receiving the money and delivering the deeds.

[Now, on this state of facts, there arise three principal questions, which I leave to the jury, to be decided by them. In the first place, did Mr. Strong as Mrs. Griswold's agent so far empower John Griswold to act for her in the sale of the premises, as to render her responsible for what he said and did? Second: Did Mr. Griswold state what he did not know to be true, and what was, in fact, false, without having any reasonable ground for believing it? Third: Was this statement credited and believed by the purchasers? Did it influence them in buying, and induce them to give a larger sum than they otherwise would have consented to pay? Unless all three of those propositions are found affirmatively by the jury, they should render a verdict for the defendant. If they are so found, the · jury may give a verdict for the plaintiffs, if upon the other parts of the case they are of opinion with them.] [4]

I have not been asked to go into some other particulars which are in the case, and do not mean therefore, to say that the jury must find a verdict for the plaintiffs if the above three points are in their favor, but I do mean to say that, unless they are in their favor, the verdict ought to be for the defendant.

The jury returned a verdict in favor of the plaintiffs for $3,640. A rule for a new trial having been discharged, the defendant took this writ, assigning as error:

1. The refusal of the defendant's point.[1]

2–4. The portions of the charge embraced in [ ] [2 to 4]

5, 7. The admission of the plaintiffs' offers.[5 7]

*Mr. Richard C. Dale* (with him *Mr. John C. Bullitt*), for the plaintiff in error:

1. The fundamental error running through the action of the ·court below, was the failure to recognize that the action of deceit is an action upon a tort involving moral turpitude on the part of the defendant, which must be proved, either by direct evidence or from such circumstantial evidence as will justify the jury in finding the existence of this deceitful intent. What is sufficient proof of deceit must be determined according to the circumstances of each case, but the scienter must exist, and before the jury can properly find for the plaintiff they must be satisfied that the defendant made a statement knowing it to be

false, or with such conscious ignorance of its truth as would in morals convict the defendant of falsehood. These principles are recognized in all the latest cases: Dilworth v. Bradner, 85 Pa. 238; Duff v. Williams, 85 Pa. 490; Erie City Iron Works v. Barber, 102 Pa. 156; s. c. 106 Pa. 126; s. c. 118 Pa. 6; McCandless v. Young, 96 Pa. 289.

2. It is submitted, however, that the misstatement which was made in this case was made by an agent employed for a limited purpose, as to matters beyond the legitimate scope of his authority, and that, therefore, while as an abstract proposition a principal may be held liable in an action of deceit for a fraudulent misrepresentation of an agent, it must clearly appear that such misstatement was within the scope of the agent's authority. An agency to convey a message to request a broker to sell, does not involve authority to warrant for the vendor the dimensions of the lot. And whatever may be the view of the court as to the scope of Mr. Griswold's authority to draft the circular, there is no evidence which supports an agency to represent verbally the acreage. The courts have been cautious in recognizing the liability of principals for the deceit of their agents: Erie City Iron Works v. Barber, supra; Cornfoot v. Fowke, 6 M. & W. 358; Udell v. Atherton, 7 H. & N. 172; Wilde v. Gibson, 1 H. L. 605.

3. The elements of the deceit must be averred in the declaration and proved by the evidence. In the present case, the plaintiffs proved only an erroneous statement by the plaintiffs' agent. There was no direct proof of deceitful intent, and there was nothing in the circumstances to indicate anything but mistake; consequently, the defendant was entitled to a binding instruction. The plaintiffs themselves lived upon the lands for five years after their purchase, and repeatedly stated to their visiting friends, according to their own testimony, that "the estate is seven acres and rather more." The burden was upon the plaintiffs to do more than prove the fact of a mistaken statement by defendant's agent: Kreiter v. Bomberger, 82 Pa. 59; Wallace v. Hussey, 63 Pa. 24.

*Mr. Rufus E. Shapley* (with him *Mr. Ellis Ames Ballard*), for the defendants in error:

1. Actions for deceit naturally fall into three classes, and a

different rule of law is applicable to each class : (1) Those in which the representation is as to the credit or financial standing of a person. (2) Those in which the representation is as to the quality of an article offered for sale. (3) Those in which the representation is as to a matter of fact, susceptible of knowledge and from its very nature presumed to be within the knowledge of the party making the statement. It is from cases of the first class the defendant deduces the rule of law she would apply in this case : Dilworth v. Bradner, 85 Pa. 238 ; Duff v. Williams, 85 Pa. 490. In cases under this class, the representation is at best, but the statement of an opinion. If, therefore, a man truthfully states his opinion, he has given all that is required, and an inquiry into the grounds on which it is based is not pertinent.

2. In the second class of cases, the representation may be said to be a mixed matter of fact and opinion. In many of these cases, the law affords another ample remedy in an action of assumpsit on the warranty expressed or implied, and, such a remedy being open, the law will be slow to allow the plaintiff to pursue the more obnoxious action of tort; in other words, the statement will be considered to be a warranty, rather than a misleading representation. The law in this class of cases has lately been elaborately considered and definitely settled in Erie City Iron Works v. Barber, 102 Pa. 156; s. c. 106 Pa. 126; s. c. 118 Pa. 6. In that case the court below charged : " When a man, having no knowledge whatever on the subject, takes it upon himself to represent a certain state of facts as existing, he does so at his peril; and if it be done either to secure some benefit to himself or to deceive another, he is guilty of fraud." This statement of the law, sustained by this court, shows the right of the plaintiffs in the present case to recover on the evidence submitted.

3. The present action, belonging to the third class of cases referred to, could have been rested on less direct evidence of fraud than that actually presented, and should be governed by a less strict rule of law than was applied to the facts by the court below. The fraud here consists in the reckless assertion that that is true of which the party knows nothing, and in deceiving the other party thereby; and even the actual belief of the party in the truth of that which he asserts, is immaterial, unless he had some apparently good reason for his belief, or

unless his representations related to matters of opinion : and it is not necessary to show, in such case, that the defendant knew his representations to be untrue : Moak's Underhill on Torts, 548; Cooley on Torts, 500. The following cases are exactly on all fours with this: Bennett v. Judson, 21 N. Y. 238; Krumm v. Beach, 96 N. Y. 398; Monroe v. Pritchett, 16 Ala. 790; Rhoda v. Annis, 75 Me. 17 (46 Am. Rep. 354); Cabot v. Christie, 42 Vt. 126 (1 Am. Rep. 313); Litchfield v. Hutchinson, 117 Mass. 197; Law v. Grant, 37 Wis. 548; Lynch v. Mercantile Trust, 18 Fed. R. 488.

4. In the following cases, although the representations were made directly by the principal, the fraud was not directly proven, but the jury were allowed to find it from proof of lack of positive knowledge: Brooks v. Hamilton, 15 Minn. 31; Fisher v. Mellen, 103 Mass. 506; Hazard v. Irwin, 18 Pick. 95; Caldwell v. Henry, 76 Mo. 254; Thomas v. McCann, 4 B. Mon. 610; Sheppard v. King, 7 E. C. L. 83. And see Frederick v. Campbell, 14 S. & R. 295. But let it not be forgotten that, as the evidence stands in this case, there was actual fraud in the defendant herself inasmuch as, being totally without information, or belief even, as to the acreage of this tract, she remained silent, although she knew that a circular describing it as containing seven acres was being given to prospective purchasers.

OPINION, MR. JUSTICE MITCHELL :

There can be no question at this date that in an action of deceit, the scienter must not only be alleged, but proved, and the jury must be satisfied that the defendant made a statement knowing it to be false, or with such conscious ignorance of its truth, as to be equivalent to a falsehood. This is the general rule, and it has been declared with notable emphasis in several recent cases in this state: Dilworth v. Bradner, 85 Pa. 238; Duff v. Williams, 85 Pa. 490; McCandless v. Young, 96 Pa. 289; Hexter v. Bast, 125 Pa. 52.

If, therefore, the learned judge at the trial had been stating the general rule, his language to the jury, "Did Mr. Griswold state what he did not know to be true, and what was in fact false, without having any reasonable ground for believing it?" would have been open to the objections so forcibly made against it by the learned counsel for the plaintiff in error But the

judge was not defining the rule in general, but stating so much of it and in such manner as applied to the case before the jury. Thus he drops out entirely the first branch of the rule, did the party state what he knew to be false, because there was no evidence nor was it charged that Griswold had made a deliberate and intentional misstatement. The gravamen of the case was that he had, with a recklessness equivalent to fraud, made a positive statement of a material fact, when he had no knowledge on the subject. Plaintiff had proved that the statement was made, and was in fact untrue. Defendant had given evidence as to her innocence of the misrepresentations, but John Griswold had not been called to state his knowledge or belief, or explain his representations. In this state of the evidence, the judge submitted to the jury whether Griswold had any reasonable ground for believing his statement to be true, or, in other words, could the jury find from the circumstances, as shown by the evidence, any ground to suppose that Griswold did so believe. The language was a fair statement of so much of the general rule as applied to the evidence then before the jury. As it is well stated by the learned judge in his opinion on the rule for a new trial, " Had John Griswold been put on the stand, to vindicate his good faith and state the grounds of his belief, or show how he came to believe in the absence of information . . . . . it might have been proper to instruct the jury that whether the causes which influenced his mind were or were not reasonable, or such as they could approve, still if he acted in good faith and expressed a sincere opinion, he should not be found guilty of fraud. But as the case actually stood, such an instruction would have tended to mislead, by raising an issue for which there was no foundation in the evidence."

It is argued here that the evidence was not sufficient to sustain the action, and that a verdict should have been directed for defendant, as asked by a point submitted at the trial. In support of this view, it is said that plaintiff has only proved an erroneous statement, with no direct proof of deceitful intent. But plaintiff had proved the statement, its falsity, and the circumstances under which it was made, tending to show a reckless assertion in entire ignorance of the fact. What more was necessary to make out a prima facie case, or could ordinarily

be proved? Fraud and intent to deceive do not proclaim themselves openly, nor can they usually be proved by direct evidence. A man who is shown to have made a false statement, from the consequences of which he will be relieved if he honestly believed it to be true, even on insufficient grounds, should at least be charged with the burden of showing that he did have such belief.

A mere misstatement of the amount of land, as said by SHARSWOOD, J., in Kreiter v. Bomberger, 82 Pa. 59, is not sufficient to prove fraud, but, as said in the same case, if the deficiency is very great in proportion to the whole, it is evidence of fraud; and where, as here, the misstatement is made by advertisement, and by descriptive circular, is repeated at least twice orally in response to the direct question of the intended purchaser, and is altogether unexplained by the person making it, though his principal and those connected with him in the transaction are shown to have been absolutely ignorant on the subject, we cannot say that there was not a prima facie case to go to the jury.

The point that the plaintiff in error was not liable for the statements of her agent, John Griswold, is not tenable. The general rule that a principal is responsible for the misrepresentations of his agent within his authority, is beyond question, and the better opinion is that as to third parties affected by his acts or words, it is the apparent scope of his authority, and not his actual instructions, that must govern. That is the basis on which the business of the world in the present day is transacted, and the rule should be enforced in a liberal spirit, with regard to the actual habits of the community. That an agent who is empowered to engage a real estate broker to make sale of a country seat, is thereby authorized to give the broker a description of the place, including its acreage, is so clear, that the learned judge would have been justified in submitting the point to the jury in terms much stronger against the defendant below than he did. But the question does not really arise, as there was testimony not only that the defendant knew of the preparation of the circular by her agent, but also that she had herself given it to parties who inquired about the property. Under this evidence the jury could hardly fail to find that whether it was within the agent's original authority or not, she had ratified his action.

The remaining assignments of error were not pressed at the· argument, but may be briefly noticed. The evidence of the value of the land by the acre is objected to, because the place is claimed to have been sold as a whole. But there was evidence that in arriving at a price, the quantity of the land was one of the elements of the calculation, and upon this view of the case, which was plaintiff's contention, the value per acre was certainly relevant. .

The objection to Mr. Everly as an expert on the value of real estate, can hardly be made seriously. His testimony shows not only a very large, and widely extended experience in the general business, but also as much specific knowledge of values in the immediate neighborhood of this property, as could be reasonably looked for, in regard to any suburban district of the same character.

We have given this case a very careful examination, not only because it was due to the exceptionally strong and earnest argument of the very able counsel for the plaintiff in error, but also because it is, in some sense, a hardship on the plaintiff in error, who is conceded to have been personally entirely free from any intentional wrong in the matter. Even her agent, John Griswold, who made the trouble, may not have had any actual intent to deceive, but he was shown to have made an apparently reckless statement of a fact of which he had no knowledge. An explanation from him might have turned the verdict, and it is the plaintiff in error's misfortune that he was not called at the trial, to make such explanation if he had it to make. The case, as a whole, was a very close case, in which the jury might have found for either party without being demonstrably wrong, but if they did in fact make a mistake, it was for the learned judge who tried the cause to correct it, not for us. There was no error of law in the trial, and beyond that we are not authorized to look.

Judgment affirmed.