## Scott, Appellant, *v.* Heisner.

*Deceit — Evidence — Burden of proof — Fraud — Misrepresentations ·— Non-suit.*

In an action of trespass for deceit against a stockholder and officer of a gold mining company, to recover damages for losses alleged to have been sustained by false representations made to the plaintiff by the defendant on the strength of which the former purchased the stock of the company, the plaintiff is bound to show not only that the representations were in fact false, but also that the defendant knew that they were false at the time he made them. If the plaintiff fails to show by his proof that the defendant knew- that the representations were false, he will be non-suited.

Argued Oct. 17, 1906.    Appeal, No. 140, Oct. T., 1906, by plaintiff, from order of C. P. No. 2, Phila. Co., March T., 1904, No. 3,242, refusing to take off nonsuit in case of John D. Scott v. J. W. Heisner.    Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.    Affirmed.

Trespass for deceit.    Before WILTBANK, J.

The facts are stated in the opinion of the Superior Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.        \

*Error assigned* was in refusing to take off nonsuit.

· *L. W. Baxter*, for appellant.—The case should have been submitted to the jury : Thompson v. Doty, 13 Pa. Dist. Rep. 375 ; Griswold v. Gebbie, 126 Pa. 353; Cummings v. Cummings, 5 W. & S. 553 ; Land & Imp. Co. v. Mendinhall, 4 Pa. Superior Ct. 398.

*Samuel K. Louchheim*, for appellee.—In an action of deceit, the scienter must be proved, and the only ground for recovery for false representations is the bad faith in making them. The reasonableness of the defendant's ground for his belief in his representations cannot be called into question : Duff v. Williams, 85 Pa. 490 ; Kern v. Simson, 126 Pa. 42 ; Griswold v.

Gebbie, 126 Pa. 353; Dutton v. Pyle, 7 Pa. Superior Ct. 126; Lamberton v. Dunham, 165 Pa. 129.

In an action of deceit against the principal to recover damages for misrepresentations made by an agent, the fraud should be clear and there should be in addition some evidence of participation or knowledge on the part of the principal, or circumstances which should have put him upon inquiry: Freyer v. McCord, 165 Pa. 539; Keefe v. Sholl, 181 Pa. 90.

OPINION BY HEAD, J., April 15, 1907:

The plaintiff's action being in deceit, he assumed the burden of showing that the stock purchase, of which he complains, was induced by representations of fact which were not only false, but knowingly and fraudulently false. "There can be no question at this date that, in an action of deceit, the scienter must not only be alleged but proved: " Griswold v. Gebbie, 126 Pa. 353. Because of his failure to discharge this burden the case of the plaintiff ended in a compulsory nonsuit which the court in banc refused to take off.

It appears from the evidence that in the fall of 1902, the defendant, who lived in San Francisco and was interested, as stockholder and officer, in a group of mining companies, visited Philadelphia, and met A. G. Noeckel, a licensed stockbroker in that city, whose business was generally the handling of stocks and more particularly of oil and mining stocks. Through correspondence early in that year, Noeckel had been appointed the "fiscal agent" for Philadelphia of the Grass Valley Consolidated Gold Mining Company, one of the companies in which defendant was interested, he being then its secretary, and was authorized to sell its stock at a price named. He had also been furnished with printed circulars for distribution among prospective purchasers of stock and to the public generally. These circulars contained a glowing description of the generally prosperous conditions of the gold mining industry, especially in the section of country in which the Grass Valley mine was located; a statement in round figures of the amounts of gold that had been produced in the past from a long list of mines, without attempting to specify the length of time covered or the cost of production ; explained at some length the different methods of mining ; gave the names and addresses of the officers of the com-

pany, of a number of stockholders who had personally visited and examined the property of the company, and of many prominent business men in the various cities of the country, east and west, of whom interested persons might inquire as to the value of the property and the honesty and capacity of those in control of its operation. It then went on to advance a number of reasons why, in the near future, the mine ought to reach a dividend paying basis and prove a veritable golden harvest for those fortunate enough to be the owners of its stock. According to the testimony of Noeckel, in his personal interview with the defendant, in October, 1902, the latter declared his unlimited confidence in the great value and rich prospects of the mine; stated that much pay ore was already in sight; that with the installation of new machinery and the development of the workings, much more and more valuable ore would be found when lower levels would be reached : in a word, characterized his conception of an investment in the stock of the company at then existing prices, by asserting it to be as sound as "an investment in government bonds."

In December, 1902, the plaintiff, who was a piano salesman, called at the office of Noeckel who directed his attention to the Grass Valley mine, gave him a circular, told him of his personal interview with the defendant and suggested a purchase of stock. The plaintiff replied, according to Noeckel, "If that is right I will look into it and let you know in a few days," or, according to his own testimony, "I will think the matter over." He shortly afterwards returned and expressed his willingness to buy $1,000 worth of stock if he could pay for the same by turning in two pianos at $500 each. This offer was transmitted by mail to the defendant, was accepted, the pianos were shipped and the plaintiff received certificates for 2,860 shares of stock. There is no evidence whatever that at the time of the purchase and for several months afterwards the stock was not worth all that the plaintiff had paid or indeed that it could not have been sold at an advance; nor does it appear what efforts, if any, the plaintiff made to verify the statements of fact contained in the circular.

The plaintiff at once became interested in the idea that he could sell considerable blocks of stock if a satisfactory commission would be allowed to him, and opened up a correspond-

ence directly with the defendant on this subject, several lengthy letters passing between them which appear in the evidence. In these letters the defendant fixed the commission that would be paid to the plaintiff. on sales of stock made by him, and, at the request of the latter, offered to allow the sum of $150 out of each sale of $1,000 worth of stock, to defray the expense of a personal visit to and inspection of the property by the plaintiff or a party he might organize. Indeed such inspection and examination seem to have been at all times invited and desired by the management.

In the summer of 1903, financial misfortune overtook the company as a result of which its property was swept away and all the golden hopes of the stockholders were shattered. This catastrophe, according to a letter of defendant, was brought about by the combination of a number of unexpected causes. Factional disputes among the stockholders resulting in such manipulation of the stock market by one party as to break the price of the stock and stop all sales of it; the sudden " pinching out " of the ore vein which was expected to grow richer; the encountering of a cross level which flooded the mine with water and necessitated the immediate purchase of new, powerful and costly machinery to continue operations and the refusal of stockholders to supply the golden stream which had been cut off when sales of new stock had been stopped by the break in price. Defendant further alleged that the management of the company had been at all times honest; that neither he nor his fellow officers had received or demanded any salary for their services, but that all had confidently relied on the future increase in the value of their stock and the dividends it was expected to earn, to compensate them for the expenditure of their time and efforts. In other words, that he was a fellow sufferer with the plaintiff rather than the responsible cause of his loss. The truth or falsity of these statements of fact could have been ascertained by the plaintiff, and as he produces no testimony to assail their truth it is fair to presume there was no such evidence. If true, they furnish an adequate cause for the loss of the property, entirely consistent with the honesty and good faith of the defendant at the time the plaintiff bought and leave the case of the plaintiff wholly without any evidence of that covin and fraud which would alone support an action in deceit.

VOL. XXXIII—19

After a careful consideration of all the testimony we are unable to reach any other conclusion than that adopted by the learned court below.

Judgment affirmed.