# Bobarsky *v.* Locust Mountain Coal Company, Appellant.

*Contracts—Master and servant—Suit for wages—Mining coal—Amount mined—Case for jury.*

In this suit for wages for mining coal, it was held there was sufficient evidence to support the verdict.

Argued December 4, 1922. Appeal, No. 162, Oct. T., 1922, from judgment of C. P. Schuylkill County, May T., 1919, No. 271, on verdict for plaintiff in the case of Joseph Bobarsky v. Locust Mountain Coal Company. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Assumpsit for recovery of wages due for mining coal. Before KOCH, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $195.44 and judgment thereon. Defendant appealed.

*Errors assigned* were various rulings on evidence.

*M. M. Burke,* and with him *Daniel W. Kaercher,* for appellant.

*M. A. Kilker,* and with him *Roscoe R. Koch,* for appellees.

OPINION BY LINN, J., March 2, 1923:

In this case, argued with 163, October Term, we have seven assignments of error: four, characterizing the evidence insufficient to sustain the suit; two, complaining that evidence was ruled out; and one, that evidence was admitted against objection. Appellees were employed by defendant to mine anthracite coal. They sued separately for money alleged to have been earned by their joint labor. Objection to the form of action was waived.

Defendant agreed to pay "$1.55 for each car of coal cut by [plaintiff] at said mines, without the loading thereof, and sixteen cents extra to be paid for each car loaded by plaintiff." Each plaintiff claimed to have "cut and mined 400 cars" more than he had been paid for. No loading is involved. Defendant claimed it paid in full. On that issue they went to trial.

The cases were tried twice. At the first trial, the court directed verdicts for defendant, and then set them aside. After the second trial, in refusing defendant's motions for judgment n. o. v. and for a new trial, the learned trial judge said that though he "would have found in the defendant's favor if the case had been tried before [him] without a jury, because the defendant's evidence before [him] is more persuasive than the evidence of the plaintiff," he did not consider the verdict perverse within the rule requiring him to grant a new trial. While the trial court, in hearing and observing the witnesses relate their evidence, possessed an advantage not enjoyed by this court in considering it, our review is still more circumscribed by law. In Griswold v. Gebbie, 126 Pa. 353 at 366, the Supreme Court said, "The case, as a whole, was a very close case, in which the jury might have found for either party without being demonstrably wrong, but if they did in fact make a mistake, it was for the learned judge who tried the cause to correct it, not for us. There was no error of law in the trial, and beyond that we are not authorized to look."

Since then, the Act of May 20, 1891, P. L. 101, has enlarged the scope of review, but it has been held that the power granted by that statute is exceptional, to be exercised only in very clear cases of wrong or injustice which the court below should have remedied: Schenkel v. Traction Co., 194 Pa. 182, at 186; Jones v. Pennsylvania Co., 60 Pa. Superior Ct. 438. See also Kelly v. Traction Co., 204 Pa. 623, 625. As we are reviewing a jury trial, we shall refer to some of the evidence which the jury may have accepted, applying the familiar rule requiring us to take the oral evidence best supporting the verdict.

Plaintiffs were miners of many years' experience. The mining in dispute took place in December, 1918, in chamber or breast No. 9 described in the record. It extended from its battery about 155 feet, ascending at an angle varying from 50 to 70 degrees. The battery was a timber structure to retain the mined coal in the breast until loading; from there a chute about 35 feet long extended to the gangway to run the coal into the cars. At the top of the breast was the vein of coal being mined. Footing for the miners while working there, was furnished by mined coal—the gob—left lying in the breast on the floor of the incline. The mining in this chamber had reached a stage bringing them within some twenty feet of the outside surface of the earth. On December 27, 1918, plaintiffs, having bored a hole 22 feet upward through the vein of coal and loaded it with explosives, fired a blast which shot through to the outside surface and brought down coal and rock filling the breast. Defendant stopped work in that breast on December 28th. There is a dispute whether this blast—conceded to have been the last made by plaintiffs—was fired on December 13th or on the 28th. Defendant contended for the 13th, and that plaintiff thereafter loaded all the coal in the chamber, and that it was abandoned on the 28th because all the coal had been removed leaving nothing except rock brought down from the top by the blast; that plaintiffs not only loaded all the coal cut, but some cars

of rock which had to be rejected. As the date of the last blast thus became important in finding other facts, the jury was carefully instructed on the subject.

It was of course essential to furnish evidence to enable the jury to calculate the amount due, and appellant also contends such evidence was not sufficient. There was dispute about the dimensions of the breast at various points, and also about the thickness of the vein of coal, but from the figures offered by both sides, and their application by defendant's engineer (Wells), we cannot say that the jury was unable to arrive at the cubical contents and the number of mine cars the coal mined would fill. This witness testified that, if filled with coal as plaintiffs testified, the breast would hold 1,359.75 cars; whereas by using other dimensions and thickness of vein given in evidence, the witness said it would contain 533 mine cars. The record shows when the evidence was in, that counsel for appellant asked "counsel for plaintiffs to state, before we go to the jury or before submitting our points, what their claim is," and that counsel for plaintiffs replied: "We claim for each of the plaintiffs 261 cars at $1.55 a car, being half of the amount testified to by your own engineer Wells." The jury satisfied itself on the subject and in rendering its verdict, stated it found for each plaintiff in the sum of "$195.-44-1/2 for 112-1/2 cars at $1.55 per car and 6% interest from January 15, 1919......" With such evidence as we have referred to, it is obvious that well-known rules prevent our holding it insufficient to go to the jury.

This brings us to the other complaints. During cross-examination, a plaintiff was asked "Can you tell us whether the coal that you say you left in this breast on the 28th of December, when you quit there, is still there?" An objection was sustained. While the assignment is bad because no exception was taken, it needs no argument to show defendant was not harmed; if the coal was there then, defendant could prove it by its own witnesses, though no evidence to that effect was offered;

and if the coal was not there at the time of the trial, which is what the question asked, that fact furnished no information as to whether coal was left there on December 28, 1918. Complaint was also made that the same plaintiff in cross-examination was not permitted to answer this question: "Did you work at this colliery, in another part of the mine, after the 28th?" Though the relevancy of the inquiry does not appear, there is no cause for complaint, as defendant offered documentary evidence that plaintiff received wages for the first half of the month of January, 1919. The remaining assignment complains that a witness who had testified at the first trial, was permitted to answer the following question: "When you were sworn as a witness in this case last May, weren't you asked the question, 'When did they blow through' and didn't you give the answer 'On the 28th of December.'" He answered, "Yes. On cross-examination I said 13th." No harm in that has been pointed out, and we perceive none.

In passing, we may note that while the refusal to grant a new trial was joined in the same assignment of error (contrary to the rule) with the complaint against the refusal of judgment n. o. v., we could not sustain that complaint on the merits because it does not appear that there was abuse of judicial discretion in declining to grant a new trial.

Judgment affirmed.