## Custar *versus* The Titusville Gas and Water Company.

1. Where representations made by an agent to obtain subscriptions to stock of a corporation are a part of a scheme of fraud participated in by its officers; or where the representations are such as the agent may reasonably be presumed to have authority to make, they may be given in evidence to show the fraud by which the subscription was procured.

2. Where there is no reasonable presumption of authority and no actual authority, the corporation will not be prejudiced by the acts of the agent.

3. Where the representation of the agent is contrary to the interests and duty of the corporation, e. g., that he will release a subscription that he is taking, it is not a reasonable presumption that he has such authority.

4. A subscriber on such terms would be *particeps criminis*, and held to all the responsibilities of a bonâ fide subscriber.

5. A subscription to stock is a contract between the subscriber and the corporation, governed by the same rules of honesty and fairness as apply to ordinary contracts.

6. An act of incorporation provided that delinquent subscribers "should pay interest for delay at the rate of 5 per cent. per month," &c. *Held*, that the 5 per cent. is a penalty.

November 22d 1869.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Crawford county*: No. 145, to October and November Term 1869.

This was an action of assumpsit to February Term 1867, by The Titusville Gas and Water Company, to the use of Stephen Parish, against George Custar, for the recovery of his subscription for 10 shares of the capital stock of the plaintiffs.

The company was incorporated February 17th 1865, with a capital of $50,000, in shares of $50 each, with privilege to the directors to increase the same.

Sect. 5 provided that if any subscriber should neglect to pay any instalment called for by the company at the time and place appointed and it shall remain unpaid for 30 days he shall in addition to the instalment pay interest for the delay at the rate of 5 per cent. per month, and the company may recover the said instalment and interest or forfeit the amount already paid as the directors may choose.

The plaintiffs gave in evidence a subscription paper for stock of the company, signed October 30th 1865 by the defendant (amongst others) for " Ten shares—$500."

They gave evidence that the first instalment was called January 22d 1866, for 10 per cent., payable immediately; the second payable May 5th for 10 per cent.; four other instalments, of 20 per cent. each, were called, payable respectively June 9th, July 14th, August 27th and September 25th 1866.

The defendants offered to prove: by Joseph Barnsdall, " That

[Custar *v.* Titusville Gas and Water Co.]

he is a subscriber to the capital stock of the company of plaintiff for ten shares made before the subscription of the defendant; and that when he made his subscription the president of the company agreed with him that he should not be called on to pay said subscription, and thus to show a fraud on bonâ fide subscribers, to be followed by evidence of like agreements with other subscribers."

And by J. H. Broas, "That he was induced to subscribe to the stock of the company by the declarations of the president and secretary, acting for the company, that the subscriptions made were bonâ fide, and he was induced to change his subscription from six shares to twenty-six shares, on receiving from the president of the company a release in writing, from the payment of the twenty shares, and that he was a subscriber before the defendant, for the purpose of showing fictitious subscriptions that would be a fraud on the defendant."

Also "that the subscriptions of many others of the subscribers were those of irresponsible persons."

These offers were all rejected, and several bills of exception sealed.

The defendants gave in evidence the minutes of the company of August 11th 1865, showing that on that day 1000 shares—$50,000—the authorized capital stock—had been subscribed; also, minutes of October 18th 1865, showing that the subscribers to the above 1000 shares of stock had transferred them to J. N. Angier and others; also, an act approved February 17th 1865, repealing so much of the act of incorporation as provides for the payment of interest at 5 per cent. per month for delay in paying instalments.

The plaintiffs, in rebuttal, gave in evidence their minutes of October 18th 1866, at which time it was resolved that the capital stock be raised to $75,000; also, resolved that J. N. Angier, &c., be requested to transfer back to the company the stock which "they obtained from the original stockholders." The request was "acceded to by Messrs. Angier," &c. It was also resolved that the secretary open a stock book and solicit subscriptions, &c.

The defendant requested the court to charge the jury:—

" 1. That if they find that $50,000 of the capital stock of the Titusville Gas and Water Company was subscribed and taken before the date of the subscription of defendant, and that there had been no resolution by the board of directors increasing the same, prior to that date, the company had no stock for which the defendant could subscribe, and the plaintiff cannot recover in this action.

" 3. That the act of the 15th of April 1869, having repealed so much of the act of incorporation of the Titusville Gas and Water Company, approved the 17th day of February 1865, as allowed a penalty of five per cent. per month on subscriptions

[Custar *v.* Titusville Gas and Water Co.]

not paid, the plaintiff cannot recover the same, there being no law now in force authorizing the collection thereof.

" 4. The act of the 17th of February 1865, being a private act of legislation, the penalty imposed by its provisions for the non-payment of subscriptions cannot be enforced unless the defendant is shown to have had actual notice thereof."

The court (Vincent, J.) charged :—

" The date of October 18th 1866, under which the transfer of stock to the company was made, and stock book as claimed opened, is so clearly a mistake, that we treat it as of the proper date, viz. October 18th 1865, for the very next entry is Nov. 14th 1865, and the next December 11th 1865, at which time the subscription to stock was reported, which includes that of the defendant in this suit.

" The subscriptions then reported amounted to $57,600, of which $20,000 had been subscribed before defendant made his subscription.  *  *  *

" The defendant subscribed for ten shares, or $500 worth of the stock of the company.

"'The directors of the company called for his subscription at various times until the whole amount was called for—no part of the amount subscribed has been paid."  *  *  *

" Some time after the last call was made, this suit was brought to recover the said subscription, with the interest allowed by the act of incorporation."  *  *  *

"We think the defendant is liable to the plaintiff for the amount of his subscription, if he had notice of the calls made by the company.

" But the defendant contends that even if the plaintiff is entitled to recover, he can recover only the amount of his subscription and legal interest, or six per cent. per annum, and not five per cent. per month or sixty per cent. per annum.  The act of incorporation calls this five per cent. per month 'interest,' and says, the delinquent subscriber shall pay it in addition to the instalment called for, if he fails to pay for a period of thirty days after the time fixed for payment, and authorizes the company to sue for and recover 'said instalment and interest thereon,' or if any money has been paid, to forfeit that, at its option.

" There is no provision for forfeiting or selling the shares as in most acts of incorporation.  It is contended that this five per cent. per month is a penalty imposed upon the delinquent subscriber, and no part of the contract—that being a penalty it can only be collected by force of the statute authorizing it, and that inasmuch as by an act approved April 15th 1869, the legislature has repealed so much of the 5th section of the act of incorporation as allows the plaintiff to 'sue for and recover' this five per cent. per month, the right to recover for that is gone.

[*Custar v.* Titusville Gas and Water Co.]

["We are not without a doubt as to the amount of interest allowed by the act of incorporation, but we think the interest payable is as much part of the contract as the subscription itself, and that the company's right to the interest was as much a vested one at the end of thirty days after the call, as the right to the instalment.]

"If the right was thus vested, the legislature could not take it away, and for the purposes of this case we charge, that the right was so vested, and the plaintiff is entitled to recover both instalment and interest, subject to your opinion as to the fact of notice having been given as we have before stated.

"We answer defendant's points as follows:—

"1. We cannot answer this as requested, because the minutes of the company show, that at the time the defendant made his subscription, all the stock taken August 11th 1865, had been revested in the company, and beside that $25,000 of new stock had been created, none of which had been subscribed, nor was it all subscribed when the defendant made his subscription.

"3. We answer this in the negative.

"4. We answer this in the negative. The act of incorporation was spread out in full upon the books of the company before subscriptions were made."

The verdict was for the plaintiffs for $1298.75.

The defendant took a writ of error and assigned for error:—

1, 2 and 3. The rejection of his three offers of evidence.

4, 5 and 6. The answers to the points.

7. The part of the charge in brackets.

*F. B. Guthrie & W. R. Bole*, for plaintiff in error.—The subscription of the defendant was obtained by fraudulent representations, and therefore void: Crossman *v.* Penrose Ferry Bridge Co., 2 Casey 69; Crawford Co. *v.* Pittsburg and Erie Railroad, 8 Id. 141; Mercer Co. *v.* same, 3 Id. 389; Kishacoquillas & C. Turnpike *v.* McConaby, 16 S. & R. 140; McConahy *v.* K. & C. Turnpike, 1 Penna. 426; McCully *v.* Pittsburg & Conn. Railroad, 8 Casey 25; Pittsb'g & Conn. Railroad *v.* Graham, 2 Grant 259; Stainbank *v.* Fernley, 9 Simons 556; Central P. Railroad Co. *v.* Clemens, 10 Mo. 359; Troy Railroad Co. *v.* Newton, 8 Gray 569; Smith *v.* The Red River Silver M. Co., 12 Jur., N. S. 616; Clark *v.* Dickson, 5 Jur., N. S. 1029. The 5 per cent. for delay of payment was a penalty which the legislature might repeal, and the repealing act would relieve from the penalty: Maryland *v.* Balt. & O. Railroad, 3 Howard 534; Stoever *v.* Immell, 1 Watts 258; Hatfield Road, 4 Yeates 392; Abbott *v.* Commonwealth, 8 Watts 517; Norris *v.* Crocker, 13 Howard 429; Yeaton *v.* United States, 5 Cranch 281; United States *v.* Morris, 10 Wheat. 246; Lewis *v.* Foster, 1 N. H. 61; Pope *v.* Lewis, 4 Alabama R. 489;

[Custar *v.* Titusville Gas and Water Co.]

Thompson *v.* Bussitt, 5 Ind. 535; Eaton *v.* Graham, 11 Ill. 619; People *v.* Livingston, 6 Wendell 527. The legislature had power to pass the repealing act: Grim *v.* Weisenberg District, 7 P. F. Smith 433.

*J. B. Brawley* and *D. Derrickson* (with whom was *W. S. Morris*), for defendants in error.—No notice for payment of instalments was necessary: L. Ontario Railroad *v.* Mason, 16 New York 451; Shedd *v.* Brett, 1 Pick. 401; Smith *v.* Bank of Washington, 5 S. & R. 322. The law repealing the 5 per cent. was invalid as impairing a contract: Dartmouth College *v.* Woodward, 4 Wheat. 518; Brown *v.* Hummel, 6 Barr 86; Commonwealth *v.* Cullen, 1 Harris 138; Menges *v.* Dentler, 9 Casey 495. The 5 per cent. was not a penalty: 2 Bouvier's L. Dict. 324; Bavington *v.* Pitts'g & S. Railroad, 10 Casey 358.

The opinion of the court was delivered, January 3d 1870, by

Agnew, J.—In Crossman *v.* Penrose Ferry Bridge Co., 2 Casey 69, it was said by Justice Knox that a subscription to capital stock, induced by the fraudulent representations or statements of an agent appointed to obtain subscriptions, may be avoided by the subscriber. And in Coil *v.* Pittsburg Female College, 4 Wright 439, it was held that representations by agents of the college, that enough had been and would be subscribed, before the subscriptions for scholarships would be collected, to pay off the entire indebtedness of the college, and make the scholarships worth the notes given for them, are to be treated as expressions of opinion only, no fraud being alleged; from which it might be inferred that fraud being alleged, the falsehood of the representations would invalidate the subscription. On the other hand, it was held in Bank of U. S. *v.* Dunn, 6 Peters 51; Bank of Metropolis *v.* Jones, 8 Peters 12, and Stewart *v.* Huntingdon Bank, 11 S. & R. 267, that the declarations and assurances of the officers of a bank, that an endorser or other party would incur no responsibility by his endorsement or signature, are unauthorized and not binding on the bank without authority from the directors. In Hackney *v.* Allegheny County Mutual Ins. Co., 4 Barr 185, it was decided that the false and unauthorized representations of an agent to receive applications for insurance and the premium for a mutual insurance company, whereby the assured became a member of the company, are not admissible as a defence to an action on the premium note; nor are the similar representations of the president to the agent at the time of his appointment. The representations there were that the company was not taking risks in Pittsburg or other large cities. As it turned out, the company was broken up by its numerous risks taken in Pittsburg before the great fire of 1845.

13 P. F. Smith—25

[Custar *v.* Titusville Gas and Water Co.]

The law as to the acts of an agent of a corporation is thus stated in Angell & Ames on Corporations, p. 249. " The representations, declarations and admissions of the agent of a corporation stand on the same footing with those of an individual. To bind the principal they must be within the scope of the authority confided to the agent, and must accompany the act or contract which he is authorized to make." The principle of the cases would seem to be this, that where representations made by an agent to obtain subscriptions, are a part of a scheme of fraud participated in by the officers authorized to manage its affairs; or where they are such as the agent may reasonably be presumed, by the subscriber, to have the authority of the corporation to make them, his representations may be given in evidence to show the fraud by means of which the subscription was procured. But when there is no reasonable presumption of authority, and no actual authority to make them, the corporation should not be prejudiced by the unauthorized acts of the agent. Hence, when the representation of the agent is contrary to the interests and duty of the corporation, as that he will release or has authority to release the subscription he is taking, it is not a reasonable presumption that he has such authority, and a subscriber on such terms would be *particeps criminis*, and held to all the responsibilities of a bonâ fide subscriber. This is the very point decided in Robinson *v.* The Railroad Co., 8 Casey 334. On the other hand, a subscription to be paid in blacksmith work, acquiesced in by the commissioner taking the subscription, was held to be recoverable only on this condition: McConahy *v.* Turnpike Co., 1 Penna. 426. Tested by these principles the first assignment of error cannot be supported. The offer was not to show a scheme of fraud on the part of the company to procure worthless subscriptions of stock in order to inveigle others; but it was merely to prove the *agreement* of the president that the subscriber should not be called on for payment of his subscription, as itself the evidence of fraud upon bonâ fide subscribers. Offered in connection with the participation of the directors, the act of the president might be a link in the chain of fraud to be proved; but, offered as itself the evidence of the fraud, it was not competent without showing or offering to show that the company, through its managing officers, were privy to the fraud. The president of himself had no authority to release subscriptions, and it would be unreasonable to suppose he had, as it was contrary to the interest and duty of the company.

But the second offer comes up more nearly to the line, and depends on the meaning to be attributed to the language of the offer. The offer was to show by a previous subscriber, for six shares, that he was induced by the president to change his subscription to twenty-six shares, on receiving from the president a release in writing from the payment of twenty shares, for the pur-

[Custar v. Titusville Gas and Water Co.]

pose of showing fraud by means of fictitious subscriptions. Whose release was meant? The president's or the company's? If the former, it was unauthorized without proof of authority, and this offer went no farther than the first. If the company's release, then it was a fraud on bonâ fide subscribers. It seems to us we must understand that it was the company's release that was meant. Nothing less would exempt the subscriber from payment of the twenty shares, and make the stock "fictitious" in the language of the offer. We must take it, therefore, that the release of the company was the kind meant by the offer, and in that view the court below erred in rejecting the offer to prove the fraud of the company. A subscription to stock is a contract between the subscriber and the company, governed by the same rules of honesty and fairness in its enforcement, that apply to ordinary contracts: Railroad Co. v. Byers, 8 Casey 22; Railroad Co. v. Graham, 12 Casey 77.

We think there was error also in taking from the jury the decision of the fact whether the meeting of October 18th was in 1865 or 1866. The entry bore date in 1866, and if this was a mistake, it was for the jury to find it.

We are of opinion, also, that the interest of five per cent. a month on the subscription payable after a failure for thirty days to pay the calls is a *penalty*, and not merely interest, in the ordinary sense of the term. It is called interest in the act, but its obvious purpose, and the amount (being at the rate of sixty per cent. per annum) is for the enforcement of payment by way of a penalty. The act says as much as that the company may enforce payment either by forfeiture of the stock itself, or by a penalty of five per cent. a month for delay.

Judgment reversed, and a *venire de novo* awarded.