## HAWORTH ET AL., LIM., v. JOHN TRUBY.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS
OF INDIANA COUNTY.

Argued October 20, 1890—Decided November 10, 1890.

(*a*) The plaintiffs, wholesale grocers, by direction of their traveling sales-
man shipped a ton of coffee to the defendant, a retail grocer, which the
latter had not ordered. The shipment arriving, the salesman explained
his object to the defendant, and took the coffee and disposed of it himself.

(*b*) The defendant received repeated statements from the plaintiffs with-

out repudiating the order, and after the third one remitted to them a part of the proceeds of the coffee which had been paid over to him by the salesman, and promised by letter to pay them the balance in a few days:

1. In such case, the plaintiffs were entitled to recover the balance of the bill from the defendant, because, first, there was a plain ratification of the contract; and, second, the conduct of the defendant put into the hands of the salesman the means of perpetrating a fraud upon his employees.

2. In an action by the plaintiffs for the price of the coffee, evidence of the character of an order for a ton of coffee at the defendant's town, or that shortly thereafter there was a similar transaction on the part of the salesman at the same town, was inadmissible as irrelevant and immaterial.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 51 October Term 1890, Sup. Ct.; court below, No. 339 June Term 1888, C. P.

On April 30, 1888, an appeal was entered by the defendant from the judgment of a justice of the peace in favor of Haworth & Dewhurst, Limited, against John Truby. Issue.

At the trial on November 14, 1889, it was shown that the plaintiffs were wholesale grocers at Pittsburgh, with John L. Chambers as a traveling salesman; that, under date of November 12, 1886, Chambers sent in an order to ship to defendant, who was a retail grocer at Indiana, 2,000 lbs. of coffee. Plaintiffs shipped the coffee and sent to defendant a statement, the bill amounting to $305. A second statement was sent in December, and a third in January, 1887. On January 11th the defendant sent to the plaintiffs his individual check for $150, writing to them, " The balance I will send you in a few days." In February, the plaintiffs sent a fourth statement to the defendant, giving credit for the $150. On February 14th, the defendant wrote to the plaintiffs that he had not ordered the coffee through Chambers, but that the latter had it sent in defendant's name, and had then sold it out to other parties.

The testimony on the part of the defendant was to the effect that Chambers had asked to be permitted to order a ton of coffee in defendant's name, to save freight and to enable him to undersell other men on the road; that defendant objected

### Statement of Facts.

to allowing the use of his name; that the coffee was shipped, however, as Chambers had requested, in defendant's name, and defendant was informed of the shipment before it arrived; that Chambers was away when the coffee reached Indiana, and it remained at the station until Chambers came, when the defendant called him into the store and spoke to him about having had the coffee shipped in the manner it was, when Chambers asked the defendant not to make a fuss about it, and said it would all be sold in a few days and the money collected, and defendant could then send it to the plaintiffs. Chambers then got the coffee, disposed of it, and paid to the defendant $150, part of the proceeds. The defendant testified that he would have ordered the coffee back to the plaintiffs, but the parties to whom Chambers had sold it would have been disappointed. He admitted he had received the different statements sent to him, and had sent the remittance of $150. Chambers never paid to the defendant, or to the plaintiffs, the balance of the proceeds of this coffee.

The defendant being on the stand as a witness, he was asked by his counsel:

Q. State whether or not the merchants of this place order coffee by the ton?

Counsel stated that the purpose of the offer was to show that it was an unusual circumstance for any seller of goods in this place to buy coffee by the ton; by way of showing that plaintiffs may have had knowledge of what their agent said as to his purpose in ordering it by the ton, to enable him to sell it out in parcels to different people.

Objected to as immaterial and irrelevant.

By the court: Objection overruled; exception.[1]

A. I never knew them to.

A. C. Braughler, called for defendant.

Counsel stated: We want to show by this witness that he got the coffee pretty much the same [way?] from Mr. Chambers; by way of showing the probable knowledge this firm had of his methods of doing business.

Objected to.

By the court: Offer admitted; exception.[2]

A. I bought two boxes from Chambers. I don't know where he got it. He had the coffee at the depot possibly. The time

Charge of Court below.

I got that was close on towards the holidays 1886, as near as I can say. He shipped a ton of coffee prior to this time in my name. He came to me one day and said he had a chance of selling a ton of coffee and wanted to ship it in my name. I did not buy a ton of coffee from him. I told him I would not buy it, did not want a ton of coffee. He said that by ordering in one man's name he could buy it at less and sell it for less money. I don't know who got the coffee at all. He was representing the firm of Haworth & Dewhurst, Pittsburgh.

At the close of the testimony, the court, HUNTER, P. J., 10th district, charged the jury in part as follows:

The plaintiffs in this action claim that there was shipped to the defendant, on November 16, 1886, 2,000 lbs. of coffee, the cost of which would be $305. They admit that on January 12, 1887, there was a payment made by a check sent by the defendant of $150, which would leave a balance of $155 due, together with proper interest thereon; and this is the claim of the plaintiffs and for which this suit has been brought. They contend that the coffee was ordered by their agent, John L. Chambers, and that a bill was sent to the defendant accordingly; and upon the 12th or 13th of January, this letter and check for $150 were received of the defendant, stating that the balance would be arranged; we do not give his words but the substance of them. We may say here, that if there was nothing else in the case but this, the plaintiffs' right to recovery would be beyond question.

But the defendant contends, and so testifies, that he never bought this coffee; that it was shipped in his name without his knowledge and against his express direction to the agent, Chambers; that he would not buy the coffee, did not want that amount of it, and that it should not be shipped in his name. Yet it appears, if it be the fact, if the testimony of Truby be true, that, notwithstanding this, the coffee was shipped upon an order signed by John L. Chambers, who was the agent, the acknowledged agent of the plaintiffs.

Now, the general rule of law is, that whatever an agent does within the scope of his duties the principal is bound by his acts. And here there is no question whatever but that Chambers was the agent of the plaintiffs in going about and in solicit-

ing orders for groceries, as testified to by one of the plaintiffs themselves.

Mr. Truby explains this payment of $150; that he called Chambers, he says, into his store, and demanded to know of him why this coffee was shipped in his name and against his orders and directions. It was explained by the agent of the plaintiffs, that by shipping coffee in this way the sale of goods could be facilitated and the freight charges reduced, and that he had been so doing, as we now recall the testimony of the witness; said he proposed to retail, if I may be allowed the expression, this ton of coffee among his customers, or wherever he could sell it, and bring the money to Truby and let him send it in upon his account. Thus, Mr. Truby explains why he sent the check, the $150 having been paid according to the promise of this agent, and he supposing or resting upon the promise made by Chambers that the balance would be paid; and he explains that he wrote the letter in that way, and it was in that light and with that understanding, made with the agent of plaintiffs, that he thus acknowledged the amount of the claim and promised payment.

Now, the first inquiry that will arise in your minds is, was there a sale? Truby says there was no sale of any coffee to him; that it was shipped, as we have said, against his direction and without his knowledge; that he did not want, he says, to buy the coffee. Now this testimony is uncontradicted. Mr. Chambers, the agent, is not here. The plaintiffs themselves could not know, because they were not present. The question, then, of ratification comes up; that, although there may have been no actual sale, yet if the plaintiffs parted with their property through the representation of their agent, the same might be ratified by the defendant in this case adopting what the agent of his own volition and of his own act had done.

Now, the question will come in here, [if this agent was acting fraudulently, if he had a fraudulent intent in procuring the coffee to be shipped in the manner it' was, not only to this defendant but to other small dealers, retail dealers in the country, for the purpose, if he had a fraudulent intent,—we would say, an intent to cheat and defraud his principals,—that intent and that fraud would only bind Truby if Truby had knowledge of it.] [3] If the defendant had knowledge that such was the pur-

Charge of Court below.

pose of the agent Chambers, and he paid money upon it and entered into the arrangement with the knowledge of such fraudulent intent, we repeat, then Truby would be as guilty as Chambers himself. [But if he acted innocently throughout; if he acted without any knowledge that the intent and purpose of Chambers was to injure his principals, to cheat and defraud them, and only by way of favor sent the money for him, and promised when he sent the check that the balance would be paid, resting in good faith upon the purposes and intentions as declared by the agent of the plaintiffs themselves, such act, in the view of the court, and in the view of the law as the court understands it, would not, if he was so innocent, would not be a ratification and could not be.] [4]

Counsel for the defendant has suggested that there could only be a ratification of some act, some sale. This may be true. [If there was no actual sale, no bargain and sale, an offer to deliver and an offer to pay, made at the same time, we say if there was no such offer, then there could be no ratification of that which never existed.] [5] And yet, still, if there was no sale at all, yet with the agent he might agree and ratify what had been done, and communicate the same to the principals, the firm that the agent represented. But here, again, comes in the same question, [if the defendant was acting innocently and resting upon the declarations of the agent of the plaintiffs that this would be a good way to dispose of their goods, that it would facilitate a sale of their goods, and the defendant was innocent of any unlawful purpose upon the part of the agent, we would view it, as we have already said, that this would be no ratification;] [6] [and there is evidence here, gentlemen, that goes to show that as soon as the defendant here discovered this fraudulent business of the agent, he notified the plaintiffs and was the means of first informing them; and, upon the information so received, they pursued their fraudulent agent and had him arrested so that he might be brought to punishment.] [7] . . . . .

Now, it may be true, gentlemen, that the plaintiffs have received no further payment upon this coffee than that which was sent; [but the question is, whether or not, under the whole of this evidence, there was, as we have stated, first, a sale, or a sale afterwards ratified; or, if Mr. Truby, the present defendant, throughout was acting innocently. This, we

Charge of Court below.

say, is the question; and if you believe he was innocent throughout, he ought not to be made to pay for a thing which he did not get, when the whole matter was brought about by the plaintiffs themselves through their agent; because, as we have said before, it is a general rule that principals are bound by the acts of their agents while acting within the scope of their powers.] [8] You will, therefore, gentlemen, take the whole of this evidence and inquire from it how the facts are.

We have been requested upon the part of plaintiffs' counsel, to instruct you:

1. If the jury believe that about the time the coffee was shipped, the defendant had knowledge that the coffee had been shipped in his name; that afterwards the defendant received a statement of account between him and the plaintiffs, and, without objecting to the statement, sent to plaintiffs $150 on account of that statement, and promised to pay to the plaintiffs the balance, this was a ratification of the shipment and the plaintiffs are entitled to recover.

And further:

2. If the jury believe that the plaintiffs shipped to the defendant the coffee in question; that the defendant received a bill of the same about the time or shortly after the coffee was shipped; that a second statement of account between the plaintiffs and defendant was received by the defendant, and thereupon the defendant sent to plaintiffs a check for $150 and promised to pay the balance in a few days, this became an account stated and the plaintiffs are entitled to recover the balance.

Answer: We will affirm these points with this qualification: If you believe from the evidence that Chambers was perpetrating a fraud against the plaintiffs, his principals, and that the defendant had no knowledge of the fraudulent intent of this agent, and if the money was sent and the letter written as explained by Truby, the defendant, then there was no account stated, or ratification, as mentioned in the points. We have more fully explained the law of the case, as we understand it, in our general charge.] [11] . . . . .

The jury returned a verdict in favor of the defendant. A rule for a new trial having been discharged and judgment entered, the plaintiffs took this appeal, assigning for error:

Opinion of the Court.

1, 2. The admission of defendant's offers.[1][2]

3–8. The portions of the charge embraced in [ ] [3 to 8]

11. The answer to the plaintiffs' points.[11]

*Mr. D. B. Taylor* (with him *Mr. S. M. Jack*), for the appellants.

Counsel cited: (3) Herman on Estoppel, §§ 775, 1072; Manuf. & T. Bank v. Hazard, 30 N. Y. 229; Blair v. Wait, 69 N. Y. 116; Phila. etc. R. Co. v. Cowell, 28 Pa. 329. (4–7) Herman on Estoppel, §§ 1029, 1063; 2 Pomeroy's Eq., § 965; Wethrill's App., 3 Gr. 288; Johnson v. Fritz, 44 Pa. 449. (11) Jeffers v. Gill, 91 Pa. 295; Penna. R. Co.'s App., 86 Pa. 84; Bank of Ky. v. Schuylkill Bank, 1 Pars. 248; Blight v. Schenck, 10 Pa. 293; Herman on Estoppel, § 774; Loudon S. F. Soc. v. Savings Bank, 36 Pa. 503; 1 Am. & Eng. Encyc. of Law, 415, 422, 587.

*Mr John P. Blair*, for the appellee.

OPINION, MR. JUSTICE MITCHELL:

The learned judge below restricted the liability of defendant to the case of his knowledge and participation in the fraud of Chambers. But this is much too narrow a line for the circumstances. The coffee was ordered in defendant's name, was sent to him by plaintiffs with a bill or statement in the regular course of business, and he had immediate knowledge of all the facts by his interview with Chambers. Instead of repudiating the transaction and promptly notifying plaintiffs, he accepted Chambers's explanation and permitted him to carry out his plan. This was a clear loan of his credit to Chambers, and of itself would have made defendant liable. But, to put the matter beyond all question, the defendant received a second and a third bill, and in response to the latter sent his check for about half the amount, and promised " the balance in a few days." A plainer case of ratification can hardly be imagined.

There is another ground, entirely distinct, but equally conclusive of defendant's liability. The act of Chambers was a fraud; and, assuming the entire innocence of defendant, nevertheless he allowed a state of facts to be represented to plaintiffs which was not true, and thereby he put into Chambers's hand

the means of successfully carrying out the fraud.  It is no doubt his misfortune that he had confidence in Chambers, but nothing is better settled than that, as between these two innocent parties, the one whose conduct gave the means of perpe⁴ trating the fraud must bear the loss.

The evidence of the unusual character of an order for a· ton of coffee at that place, and the evidence of another similar transaction on the part of Chambers at a little subsequent date, were alike irrelevant and immaterial.  The custom of other dealers, or even of this defendant previously, had no bearing on a perfectly plain order for a definite quantity, given in defendant's name and plainly ratified by him.  A merchant who receives an unusually large order may, as a business precaution, consider the advisability of filling it; but, to say that its unusual size is notice, or anything to put him upon inquiry of fraud, would be giving other people's custom a potency to interfere with every man's business which has never yet been accorded to it.

Judgment reversed, and venire de novo awarded.

