Submitted on briefs March 13, decided March 26, 1912.

## COPELAND v. TWEEDLE.

[122 Pac. 302.]

LOGS AND LOGGING—EVIDENCE—FRAUD.

1. Evidence in an action to cancel a deed *held* sufficient to show that a person empowered by defendant to make a sale of land fraudulently represented to plaintiff that there was 4,000,000 feet or better of merchantable timber standing on the land.

BROKERS—POWERS OF BROKER—REPRESENTATIONS.

2. Where the owner of timber land, knowing another person's familiarity with the land, authorized him to sell it, his fraudulent representation as to the amount of timber standing on the land, was, in the absence of express limitation, within the fair and reasonable scope of his authority so as to bind the owner thereby.

LOGS AND LOGGING—RELIANCE ON REPRESENTATIONS—MEANS OF
       KNOWLEDGE.

3. Where timber land was situated at a considerable distance and was inaccessible except by a little used trail through the timber, the purchaser was without equal opportunity of knowing the truth, and had a right to rely upon defendant's representations as to the amount of timber standing on the land.

INTEREST—JUDGMENTS.

4. Under Section 6028, L. O. L., which makes the rate of interest 6 per cent on all moneys after they become due, interest on a decree canceling a deed and requiring repayment of the purchase price is not allowable from the date of the conveyance, but only from the date of the decree.

From Clatsop: JAMES A. EAKIN, Judge.

Statement by MR. JUSTICE BURNETT.

The defendants, David Tweedle and Ellen J. Tweedle, are husband and wife. On June 21, 1910, the plaintiff, who is the wife of W. H. Copeland, took conveyance from the defendants of certain lands in Clatsop County, the separate property of the defendant Ellen J. Tweedle, paying therefor $3,900. The plaintiff brings this suit to set aside that conveyance, to recover the sum of money paid for the same, and to make the decree a lien upon the land in question. In substance, the ground of her recovery is that the defendants and one John

Corcoran, a brother of the defendant Ellen, for the purpose of defrauding the plaintiff, represented to her that there was standing and growing on the land over 4,000,000 feet of merchantable fir timber suitable for market, whereas, when cruised, a fact which defendants and Corcoran well knew, there were not more than 1,300,000 feet. The plaintiff alleges that she knew nothing about the land or the timber thereon and had no knowledge that the representations made by the defendants and Corcoran were false; that the lands were situated a great distance from Astoria, where the plaintiff resided, were remote from communication of every kind and inaccessible from any highway, of all which the defendants and Corcoran had full notice and knowledge. She alleges that within a short time after receiving the conveyance she caused the premises to be cruised and ascertained that there was not to exceed 1,300,000 feet of timber of any kind on the premises, whereupon she immediately demanded from the defendants that they repay the plaintiff the sum of $3,900 and offered to reconvey the premises, and upon their refusal to accept reconveyance brought into court a deed, which she filed with her complaint, for the defendants and in which her husband joined conveying the premises to the defendant Ellen J. Tweedle.

All the allegations of fraud and misrepresentation mentioned in the complaint are denied by the answer. The affirmative matter in the answer in substance is that the defendant Ellen employed one O. F. Morton to find a purchaser for the land in question for the sum of $4,000, limiting his authority to the period of two weeks; that she did not authorize Morton, or any other person, to make any statements whatever to the effect that there were 4,000,000 feet of timber on the land; that defendants never had any conversation whatever with the plaintiff or any person acting under author-

ity of the plaintiff respecting the premises, but that about June 14, 1910, Morton notified the defendants that he had secured a purchaser, without specifying the name of the purchaser, and they executed  a warranty deed for the premises leaving the name of the grantee therein blank, which deed was delivered to the Astoria Savings Bank in escrow, and afterwards the defendants received from the bank, upon delivery of the deed, the sum of $3,800, and that they never knew who was the grantee in their deed until this suit was begun against them.   The new matter of the answer is denied by the reply.   From a decree for plaintiff the defendants appeal.

MODIFIED.

Submitted on briefs under the proviso of Rule 18 of the Supreme Court, 56 Or. 622 (117 Pac. xi).

For appellants there was a brief over the names of *Mr. A. W. Norblad* and *Mr. John F. Logan.*

For respondent there was a brief over the names of *Messrs. Charles W. & George C. Fulton.*

MR. JUSTICE BURNETT delivered the opinion of the court.

It is admitted in the testimony that neither of the defendants had any direct negotiations with the plaintiff in person.   It is also admitted that the plaintiff herself, neither directly nor by any person acting for her, had any direct negotiations with the defendant Ellen J. Tweedle.   In all the transactions involved, the plaintiff was represented by W. H. Copeland, her husband, acting as her agent by her consent.   It appears in evidence also that early in April, 1910, John Corcoran, the brother of the defendant Ellen Tweedle, addressed to her this letter signed by himself:

"Sister Ellen J. Tweedle, if you wish, in consideration of one dollar and other valuable considerations, to give me an option of thirty days to sell your claim for four thousand dollars ($4,000.00) and pay me 5 per cent

commission for selling, executing a deed and furnishing an abstract, please sign this option and mail to me and as soon as I can have disposed of it during this time will notify you that everything is ready.

Yours truly,

John Corcoran."

At the foot of the instrument Mrs. Tweedle wrote and signed these words, "I hereby accept the above offer," and returned the same to Corcoran at Astoria. This writing and the acceptance are both undated, but the testimony shows that they were executed about April 7, 1910. The plaintiff and her husband reside in Astoria where they conduct a mercantile establishment. The defendants reside some distance from Astoria in a remote part of Clatsop County. Plaintiff's husband testifies in substance that he had written the defendant David Tweedle, inquiring about real property in his vicinity with a view of purchasing timber lands, and that in the month of April, 1910, David Tweedle and Corcoran came to the store and, in conversation about lands, Corcoran told him of the land in question and stated that it had on it timber which would scale 4,000,000 feet or better. The plaintiff herself testifies that, while she did not participate in this conversation, she heard very distinctly the statements made by Corcoran. Both she and her husband testify that Tweedle was present and made no objection to this statement, but, on being asked about the same by the plaintiff's husband, Tweedle said that it is a good claim. Corcoran fixes this conversation during the 30-day period described by his authority above quoted, but he says that he stated to Mr. Copeland that in his (Corcoran's) judgment the claim had on it between 3,000,000 and 4,000,000 feet. Mr. Tweedle identifies this conversation but, without specifically denying Copeland's testimony, says he does not remember Corcoran making the statements imputed to

him by Copeland about the amount of timber on the land.

O. F. Morton is a real estate agent residing in Astoria, and it appears from the evidence that he and Corcoran were in some way operating together. When Corcoran received his letter with his sister's acceptance, already quoted, he got into communication with Morton who entered upon his own book the following:

"Ellen J. Tweedle, April 7, 1910, southwest quarter of the northeast quarter and lots numbered four and five of section 35 and lot 3 of section 34 in township 4 north of range 8 west, containing 138.36 acres."

No purchaser was secured or sale made of the land during the 30-day period mentioned in the correspondence between Corcoran and his sister Ellen. On the last day of the 30-day period, however, the defendant Ellen Tweedle was in Astoria and at the suggestion of her brother, went to Morton's office where, after some negotiation, Morton added to the language in his book, already quoted, the following words:

"Including June 21st, I give this option to O. F. Morton, for a|c John Corcoran, the above claim, in consideration of two dollars."

Mrs. Tweedle then signed this writing in Morton's book as thus amended. Morton and Corcoran testify in substance that, in winding up the transaction, all the latter had to do with it was to induce his sister to give Morton the additional two weeks in which to produce a purchaser. This does not alter the case when taken in connection with the language of the amendment to the entry in Morton's book and the fact that Corcoran received part of the commission for making the sale. Substantially, in legal effect, it was a continuation of the original enterprise of securing a buyer varied only by a conventional change of agents. The fraudulent representation had been made by one in authority and its effect on the plaintiff only remained to be seen.

S. G. Trullinger was also a real estate agent operating with Morton. At this juncture, without the knowledge of Ellen, so far as appears in the record, he took up the question with the plaintiff's husband and finally succeeded in effecting a sale prior to June 21, 1910. But for anything in the testimony Morton had no communications on the subject whatever with either the plaintiff or her husband. Soon after making the conveyance, the plaintiff caused the land to be cruised by two parties, and the highest estimate shows but little in excess of 1,800,000 feet of merchantable timber. Corcoran testifies that he has had considerable experience in timber and was familiar with the land in question. Considering his opportunity of knowledge and his skill as a timberman, the great disparity between his avowed statements and what actual cruising showed the timber on the land would scale, detracts largely from the value of his testimony.

1, We take it, therefore, as established by the preponderance of the testimony, that Corcoran did represent to plaintiff's husband, who was acting for her, that the claim contained 4,000,000 feet of merchantable timber and better.

2, 3. The question to be determined, as decisive of the case, is whether or not the representation thus made was binding upon the defendant, Ellen. It is beyond dispute that this representation was made while Corcoran was empowered by the defendant Ellen Tweedle to procure a purchaser for the land in question. It was within the scope of his authority to describe the land to an intending purchaser and to state what it contained in the way of improvements or timber or the like. Without making some such representations, it would be impracticable to procure a purchaser. There is nothing in the writings between him and his sister limiting the usual and general authority thus given. The legal deduction from Cor-

coran's statement so made is that it affects the defendant Ellen the same as if she was there personally present and made it herself. She is bound by this representation of her authorized agent, it being within the fair and reasonable scope of his authority. She placed it in the power of Corcoran to make a misleading statement with intent to deceive, and, that being the case, she cannot complain if he did defraud the plaintiff. Corcoran was familar with the land, had been over it, and knew the conditions there, and his knowledge on that subject is imputed to his principal, Ellen Tweedle. The plaintiff and her husband both testify that they relied upon him, and we think they had a right to do so, because they had not equal opportunities of knowing the truth. The land was situated in a remote part of Clatsop County, inaccessible except by a little used trail through the timber. Under these circumstances, therefore, the defendant Ellen must abide the result of her agent's misrepresentations. Although perfectly innocent of fraud herself, yet, having placed her brother in a position to defraud by putting her land in his hands for sale, the loss resulting from his deception must fall upon her as between herself and another equally innocent. *Fiore* v. *Ladd,* 22 Or. 202 (29 Pac. 435).

4. We think that the plaintiff is entitled to a decree canceling the conveyance from the defendants to herself and requiring the defendant Ellen J. Tweedle to repay the sum of $3,900. The court below allowed the plaintiff interest at the rate of 6 per cent. per annum from June 21, 1910, the date of the conveyance. Prior to the decree, the case presents no situation allowing interest within the meaning of Section 6028, L. O. L. The decree of the court will be modified and one here entered to the effect that the legal title of the land in question is in the defendant Ellen J. Tweedle, subject to the lien of the decree so far as the same shall be for the recovery of money, and that the plaintiff have and recover from the defendant Ellen

J. Tweedle the sum of $3,900 with interest thereon at the rate of 6 per cent. per annum from February 28, 1911, the date of the decree of the circuit court. By reason of the modification here found necessary, neither party will be allowed to recover costs or disbursements from the other in either court.                              MODIFIED.