499 A.2d 282

**Michael J. AIELLO and Kathy Ann Aiello, Appellants,**

v.

**ED SAXE REAL ESTATE, INC., and Sidney F. Jones, Jr., Appellees.**

Supreme Court of Pennsylvania.

Argued May 16, 1985.

Decided Sept. 24, 1985.

554

Henry O. Heiser, III, Gettysburg, for appellants.

Daniel W. Shoemaker, York, for appellees.

Before NIX, C.J., and LARSEN, McDERMOTT, HUTCH-INSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is the appeal of Michael J. Aiello and Kathy Ann Aiello, Appellants, from that portion of the Opinion and Order of the Superior Court which vacated a judgment entered against Ed Saxe Real Estate, Inc. (Saxe), Appellee, and entered judgment N.O.V. in favor of Saxe, in Appellants' trespass action against Saxe and Sidney F. Jones, Jr. (Jones) for fraudulent misrepresentation.

Appellants, a young married couple, were interested in purchasing real estate on which they intended to build their home and to subdivide the remainder of the land. After talking with Michael Aiello's brother, Appellants decided they would contact Ed Saxe Real Estate, Inc., a local real estate agency, owned by Ed Saxe. Jim Aiello had purchased property through Saxe which he subdivided and sold off successfully and Jim convinced Appellants that Saxe would be helpful in locating land which they could subdivide.

As sole owner of Ed Saxe Real Estate, Inc., Ed Saxe was the licensed broker pursuant to the "Real Estate Licensing and Registration Act," Act of February 19, 1980, P.L. 15, No. 9, § 101, et seq., 63 P.S. § 455.101, et seq., and, as such,

was responsible for all sales and purchases of real estate negotiated by him or through his salespersons.[1] Jones, a licensed salesperson, was employed by Saxe (63 P.S. § 455.603)[2], displayed his salesperson license in Saxe's office (63 P.S. § 455.601)[3], and was actively supervised and trained by Ed Saxe (63 P.S. § 455.522)[4] pursuant to the requirements imposed upon Ed Saxe by the terms of the Act. When Appellants contacted Saxe, Jones was assigned by Saxe to help them.

Appellants explained to Jones their interest in acquiring acreage and he began showing them several tracts, includ-

1. A "broker" is defined at 63 P.S. § 455.201, in pertinent part, as:
   Any person who, for another and for a fee, commission or other valuable consideration:
   (1) negotiates with or aids any person in locating or obtaining for purchase, lease or acquisition of interest in any real estate;
   (2) negotiates the listing, sale, purchase, exchange, lease, time share and similarly designed interests, financing or option for any real estate;
   (5) undertakes to promote the sale, exchange, purchase or rental of real estate...
   A "salesperson" is defined as:
   Any person employed by a licensed real estate broker to list for sale, sell or offer for sale, to buy or offer to buy or to negotiate the purchase or sale or exchange of real estate or to negotiate the purchase or sale or exchange of real estate or to negotiate a loan on real estate or to lease or rent or offer to lease, rent or place for rent, any real estate or collect or offer or attempt to collect rent for the use of real estate for or in behalf of such real estate broker. No person employed by a broker to perform duties other than those activities as defined herein under "broker" shall be required to be licensed as a salesperson.

2. 63 P.S. § 455.603 provides:
   No associate broker or salesperson ... shall be employed by any other broker than is designated upon the current license issued to said associate broker or said salesperson.

3. 63 P.S. § 455.601 provides in pertinent part:
   (a) Each resident licensed broker ... shall maintain a fixed office within this Commonwealth. The current license of a broker and of each licensee employed by such broker shall be prominently displayed in an office of the broker ...

4. That section requires that when a salesperson license application is made, that:
   The applicant shall submit a sworn statement by the broker with whom he desires to be affiliated certifying that the broker will actively supervise and train the applicant.

ing an 87-acre parcel owned by a Mr. Lystad, not a party to this case. This particular tract was the subject of a brokerage agreement between Lystad and Saxe which authorized Saxe to find a buyer for the land.

While viewing this tract, Appellants inquired of Jones whether the property was suitable for a sewage disposal system. Jones assured them that he was familiar with soil types and disposal requirements, that he had reviewed a survey of soils in Huntingdon Township, Adams County (the location of the property), that the soils were good, and that of five percolation tests performed on the subject property, three showed the soil to be suitable for conventional sewage systems and two for sand mounds. Further, Jones stated that had the percolation tests been performed in dry weather, all five would have indicated that the land was suitable for a conventional sewage system.

Based on these representations, Appellants entered into an agreement for the purchase of the 87-acre tract for $80,000.00. A closing was held in due course and Lystad executed and delivered his deed for the property to Appellants. Subsequently, Appellants conducted their own percolation tests and discovered that the soil was unsuitable for any type of sewage system or sand mound. Upon further investigation, they discovered that a prior sales agreement for the same property negotiated by Saxe had fallen through owing to the failure of the land to pass the five percolation tests. Of a series of twenty-one soil probes, twenty had shown that the soil was unsuited for a sewage system and one probe had indicated that the soil was marginally suitable for a sand mound system, but not a conventional system.

Appellants, thereupon, filed a trespass action against their agent, Ed Saxe Real Estate, Inc., a broker, and its salesperson, Sidney F. Jones, Jr., for the fraudulent misrepresentations which induced them to purchase the property. The cause proceeded to trial before a jury presided over by the Honorable Oscar F. Spicer, President Judge of the Court of Common Pleas of Adams County and the jury

awarded Appellants a verdict for $13,400.00 against Jones and $12,000.00 against Saxe. Appellees' post-trial motions for Judgment N.O.V. were denied and the verdict was reduced to judgment. Appellees appealed to the Superior Court arguing various trial court errors, but, in particular, complaining that the trial court erred in charging the jury that it could find liability against Saxe even if it had no prior knowledge of misrepresentations Jones may have made to Appellants.

Superior Court agreed, ruling that, in Pennsylvania, proof of scienter on the part of the principal at the time of an agent's misrepresentations is required to hold a principal liable in damages. Citing its own line of cases, *Littler v. Dunbar*, 166 Pa.Superior Ct. 271, 70 A.2d 365 (1950), *reversed on other grounds*, 365 Pa. 277, 74 A.2d 650 (1950); *Shane v. Hoffmann*, 227 Pa.Superior Ct. 176, 324 A.2d 532 (1974); *Eckrich v. DiNardo*, 283 Pa.Superior Ct. 84, 423 A.2d 727 (1980), Superior Court concluded that while the general rule is to the contrary, its cases require that where a broker, as principal, is sued for the fraudulent misrepresentation of its salesperson/agent, scienter of the broker must be established in order for recovery to lie against him. *Aiello v. Ed Saxe Real Estate, Inc.*, 327 Pa.Superior Ct. 429, 476 A.2d 27 (1984).

■ We granted allocatur in order to review Superior Court's conclusion that our law requires that a principal know of the fraudulent misrepresentations of his agent in order to hold the principal liable. Because we find that Saxe's scienter of his agent's misrepresentation is not necessary in order to hold Saxe liable to Appellants, we reverse Superior Court's Order and Opinion and reinstate the judgment entered against Ed Saxe Real Estate, Inc.

Few legal propositions have been more thoroughly discussed by our Court than those concerning principals and their agents. Out of that considerable body of case law emerges a well-defined rule concerning the vicarious liability of a principal for the misrepresentations of his agent, and the public policy underlying it.

These cases instruct us that a principal is liable to third parties for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances and misfeasances of his agent committed within the scope of his employment even though the principal did not authorize, justify, participate in or know of such conduct or even if he forbade the acts or disapproved of them, as long as they occurred within the agent's scope of employment. *Bachman v. Monte*, 326 Pa. 289, 192 A. 485 (1937); *Freedman v. Providence Washington Ins. Co.*, 182 Pa. 64, 37 A. 909 (1897); *DeTurck v. Matz*, 180 Pa. 347, 36 A. 861 (1897); *McNeile v. Cridland*, 168 Pa. 16, 31 A. 939 (1895); *Independent Bldg. & Loan Assn. v. Real Estate Title Ins. & Trust Co.*, 156 Pa. 181, 27 A. 62 (1893); *Griswold v. Gebbie*, 126 Pa. 353, 17 A. 673 (1889); *Brooke v. New York, L.E. & W.R.R.*, 108 Pa. 529, 1 A. 206 (1885); *Erie City Iron Works v. Barber and Co.*, 106 Pa. 125 (1884); *Custar v. Titusville Gas & Water Co.*, 63 Pa. 381 (1869); *Shelhamer v. Thomas*, 7 Serg. & R 106 (1821); *Phoenix Insurance Co. v. Pratt*, 2 Binn. 308 (1810); see also, Restatement of Agency, §§ 257, 258.

This rule of liability is not based upon any presumed authority in the agent to do the acts, but on the ground of public policy, that it is more reasonable that when one of two innocent persons must suffer from the wrongful act of a third person, that the principal who has placed the agent in the position of trust and confidence should suffer, rather than an innocent stranger. *Erie City; Brooke; Griswold; Cairns v. Pepper*, 133 Pa. 114, 19 A. 336 (1890); *Hayworth v. Truby*, 138 Pa. 222, 20 A. 942 (1890); *Independent B & L Association; McNeile; DeTurck; Brooke; Bachman.*

This result can be reached similarly on the familiar ground that when an agent exceeds his authority, his principal cannot benefit of his act and at the same time repudiate his authority. He must take the benefit to be derived from the transaction subject to his agent's fraud. *Erie; Griswold; Freedman; McNeile; Williams v. Kerr*, 152 Pa. 560, 25 A. 618 (1893); *Wheeler v. Wilson Mfg. Co. v. Aughey,*

144 Pa. 398, 22 A. 667 (1891); *Penn Natural Gas Co. v. Cook*, 123 Pa. 170, 16 A. 762 (1889). *Hughes v. First National Bank*, 110 Pa. 428, 1 A. 417 (1885); *Jones v. National Bldg. Assn.*, 94 Pa. 215 (1880); *Mundorff v. Wickersham*, 63 Pa. 87 (1869); *Musser v. Hyde*, 2 Watts & S, 314 (1841).

Superior Court's reliance on its line of cases (*Shane v. Hoffmann*, 227 Pa.Superior Ct. 176, 324 A.2d 532 (1974); *Littler v. Dunbar*, 166 Pa.Superior Ct. 271, 70 A.2d 365, *reversed on other grounds*, 365 Pa. 277, 74 A.2d 650 (1950)), which were cited as authority for the proposition that scienter is required on the part of the principal at the time the agent makes the misrepresentation were wrongly decided and are based on misreadings of our earlier cases. In *Littler*, a case involving an action in fraud and deceit brought by purchasers of real estate against the real estate and his broker, it is true that we approved Superior Court's conclusion that proof of scienter on the part of the principal was essential to finding liability against the principal, but that conclusion was based on a misreading of our earlier cases, *Keefe v. Sholl*, 181 Pa. 90, 37 A. 116 (1897) and *Freyer v. McCord*, 165 Pa. 539, 30 A. 1024 (1895). Both those cases in turn refer back to *Griswold v. Gebbie*, 126 Pa. 353, 17 A. 73 (1889), as authority for the proposition that scienter of the misrepresentation is required and here lies the source of the problem.

*Griswold* involved a suit brought by purchasers of real estate (Mr. and Mrs. Gebbie) against the grantor (Mrs. Griswold) for the fraudulent misrepresentations of her brother-in-law, Mr. John Griswold, her agent. These statements induced the Gebbies to purchase Mrs. Griswold's property. At Mr. Griswold's direction, the property was advertised by circular as consisting of nearly seven acres and when the Gebbies viewed the property, Mr. Griswold verified to them that the property consisted of seven acres. Based on his representations, the Gebbies purchased the property for $23,000.00.

Nearly five years after the Gebbies purchased the property, a survey of the land became necessary and the true acreage was determined to be 4.2 acres. The Gebbies brought suit against Mrs. Griswold, for her brother-in-law's misrepresentation and were successful, receiving a verdict in their favor for $3,640.00.

Mrs. Griswold appealed to this Court arguing that there was no evidence showing that Mr. Griswold's statements were made within the scope of his authority, as her agent, or that his statements were sufficient to show that Mr. Griswold knew the statements to be false or deceitful. In rejecting her claims, the Court, speaking through Mr. Justice Mitchell, made clear that scienter must not only be alleged, but proved. But we there were referring to the requirement that the *agent's* knowledge that his statements were false or recklessly asserted in ignorance of fact had to be established. It was scienter of the agent and not the principal that was crucial. Accordingly, it was stated that "scienter must not only be alleged, but proved, and the jury must be satisfied that the defendant (*agent*) made a statement knowing it to be false, or with such conscious ignorance of its truth, as to be equivalent to a falsehood." (Emphasis added.) *Griswold,* 126 Pa. at 363, 17 A. 73.

We specifically found untenable Mrs. Griswold's argument that she could not be liable for the statements of her agent:

Where, as here, the misstatement is made by advertisement, and by descriptive circular, is repeated at least twice orally in response to the direct question of the intended purchaser, and is altogether unexplained by the person making it, *though his principal and those connected with him in the transaction are shown to have been absolutely ignorant on the subject,* we cannot say that there was not a prima facie case to go to the jury. *Griswold,* 126 Pa. at 365, 17 A. 73. (Emphasis added).

In so ruling, the court was only reaffirming the general rule that a principal is responsible for the misrepresentations of his agent made within his authority. In *Freyer* and

*Keefe,* however, *Griswold* was misapplied and recovery against the principals was denied because proof of their knowledge of their agent misrepresentations was lacking. As can be seen, *Griswold* did not require scienter on the part of the principal and it follows then that *Freyer, Keefe,* and those cases citing *Freyer* and *Keefe,* were wrongly decided and are now expressly disapproved.

■ Today we reaffirm the longstanding and widely held rule of law that a principal is liable to innocent third parties for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances or misfeasances of his agent committed in the course of his employment,[5] although the principal did not authorize, justify or participate in, or indeed know of, such misconduct, or even if he forbade the acts or disapproved of them.[6]

**5.** The following cases from our sister states stand for the proposition that principals are bound by their agents' misrepresentations made within the scope of their employment:

Alabama, *Brennen v. Kent,* 206 Ala. 561, 90 So. 790 (1921); Arkansas, *Vaught v. Paddock,* 98 Ark. 10, 135 S.W. 331 (1911); Connecticut, *Kiss v. Kahm,* 132 Conn. 593, 46 A.2d 337 (1946); Delaware, *Webster v. Palm Beach Ocean Realty Co.,* 16 Del.Ch. 15, 139 A. 457 (1927); Florida, *Phifer v. Steenburg,* 66 Fla. 555, 64 So. 265 (1914); Georgia, *Puckett v. Reese,* 203 Ga. 716, 48 S.E.2d 297 (1948); Hawaii, *Wong Chan v. Ah Yong,* 9 Haw. 346 (1893); Idaho, *Oregon Mortgage Co. v. Renner,* 96 F.2d 429 (1938) (CA 9th) Idaho; Kentucky, *Railey v. Roberts,* 33 Ky.L.R. 221, 109 S.W. 903 (1908); Minnesota, *Lang v. Merbach,* 96 Minn. 431, 105 N.W. 415 (1905); Mississippi, *Alexander v. Meek,* 132 Miss. 298, 96 So. 101 (1923); Montana, *McCarty v. Lincoln Green, Inc.,* 620 P.2d 1221 (1980, Mont.); Nebraska, *Hoock v. Bowman,* 42 Neb. 80, 60 N.W. 389 (1894); Nevada, *Bank of Nevada v. Butler Aviation,* 96 Nev. 763, 616 P.2d 398 (1980); New Jersey, *Chapin v. Kreps,* 106 N.J.L. 424, 147 A. 398 (1929); North Carolina, *Ebbs v. St. Louis Union Trust Co.,* 199 N.C. 242, 153 S.E. 858 (1930); Oklahoma, *Howe v. Martin,* 23 Okla. 561, 102 P. 128 (1909); Tennessee, *Caughron v. Stinespring,* 132 Tenn. 636, 179 S.W. 152 (1915); Utah, *Dugan v. Jones,* 615 P.2d 1239 (1980); Vermont, *Greenough v. U.S. Life Ins. Co. of City of New York,* 96 Vt. 47, 117 A. 332 (1921); West Virginia, *Johnson v. Norfolk and W. Ry. Co.,* 82 W.Va. 692, 97 S.E. 189 (1918); Wyoming, *Wilson v. Rogers,* 1 Wyo. 51 (1872).

**6.** These cases from our sister states like the case *sub judice* hold that a principal is responsible for his agents' misrepresentations regardless of the principal's knowledge that the statements had been made: California, *Newcomb v. Title Guarantee & Trust Co.,* 131 Cal.App. 329, 21 P.2d 456 (1933); Illinois, *Handelman v. Arquilla,* 407 Ill. 552, 95

To hold otherwise is to violate public policy and permit the person who held out his agent as worthy of trust and confidence, to escape liability for his agent's deceits and frauds, while at the same time reaping the fruits of his agent's fraud, all at the expense of an innocent third party. Such a holding would be contrary to natural justice and common honesty.[7]

■ Accordingly, we perceive no error in the trial court's ruling that Saxe could be held liable for Jones's misrepresentation, even if Saxe had no knowledge of Jones's misrepresentations, and reverse Superior Court's contrary conclusion.

■ It was undisputed at trial that Jones was hired as a salesman for Saxe; that he had his license displayed in its office; that Saxe was the responsible broker for this transaction; that the commission earned from the sale of the subject property ($5,600.00) was paid over to Saxe, and that

N.E.2d 910 (1950); Kansas, *Rush v. Leavitt,* 99 Kan. 498, 162 P. 310 (1917); Louisiana, *Henderson v. Western Marine & Fire Ins. Co.,* 10 Rob. 164 (1845) (LA); Maryland, *Tome v. Parkersburg Branch R. Co.,* 39 Md. 36 (1873); Massachusetts, *Howe v. Johnson,* 236 Mass. 379, 128 N.E. 634 (1920); Michigan, *People v. Genther,* 218 Mich. 289, 187 N.W. 241 (1922); Missouri, *Laird v. Keithley,* 201 S.W. 1138 (Mo.) (1918); New Mexico, *Thrams v. Block,* 43 N.M. 117, 86 P.2d 938 (1938); Ohio, *McMahon v. Spitzer,* 29 Ohio App. 44, 163 N.E. 37 (1928); Oregon, *Copeland v. Tweedle,* 61 Or. 303, 122 P. 302 (1912); South Dakota, *Rasmussen v. Reedy,* 14 S.D. 15, 84 N.W. 205 (1900); Texas, *Stowe v. Wooten,* 62 S.W.2d 67 (Tex.Com.App.) (1933); Virginia, *Jefferson Standard Life Ins. Co. v. Hedrick,* 181 Va. 824, 27 S.E. 198 (1943); Wisconsin, *Law v. Grant,* 37 Wis. 548 (1875).

7. Other states which have adopted this principle include:
Alaska, *Miller v. Sears,* 636 P.2d 1183 (1981) Alaska; Arizona, *Light v. Chandler Improvement Co.,* 33 Ariz. 101, 261 P. 969 (1928); Colorado, *Mayo v. Wahlgreen,* 9 Colo.App. 506, 50 P. 40 (1897); Indiana, *Wolfe v. Pugh,* 101 Ind. 293 (1885); Iowa, *Ellison v. Stockton,* 185 Iowa 979, 170 N.W. 435 (1919); Maine, *Rhoda v. Annis,* 75 Me. 17 (1883); New Hampshire, *Concord Bank v. Gregg,* 14 N.H. 331 (1843); New York, *Bennett v. Judson,* 21 N.Y. 238 (1860); North Dakota, *Bunting v. Creglow,* 40 N.D. 98, 168 N.W. 727 (1918); Rhode Island, *Cohen v. Goldman,* 85 R.I. 434, 132 A.2d 414 (1957); South Carolina, *Byrn v. Walker,* 275 S.C. 83, 267 S.E.2d 601 (1980); Washington, *Nelson v. Title Trust Co.,* 52 Wash. 258, 100 P. 730 (1909).

from this commission, Saxe paid Jones his fee of $1,400.00 for negotiating the sale of the subject property.[8]

Moreover, under the Real Estate Licensing Act, 63 P.S. §§ 455.522, 455.604(16),[9] Ed Saxe was bound to train and supervise the conduct of Jones; to receive commissions generated by Jones's sale; and to pay him his fee for negotiating the sale (63 P.S. §§ 455.604(6), (12)).[10] Taking

**8.** These facts effectively refute the meritless argument made by Saxe that Jones was acting as an independent contractor and solely responsible for his fraudulent conduct.

**9.** For § 455.522 see Footnote 4. A similar requirement is contained at 455.604(16) and makes it a prohibited act:

In the case of a broker licensee failing to exercise adequate supervision over the activities of his licensed salespersons or associate brokers within the scope of this Act.

**10.** Brokers are required to comply with the following requirements of 63 P.S. § 455.604(5):

(i) all deposits or other moneys accepted by every person, holding a real estate broker license under the provisions of this act, shall be retained by such real estate broker pending consummation or termination of the transaction involved, and shall be accounted for in the full amount thereof at the time of the consummation or termination;

(ii) every salesperson and associate broker promptly on receipt by him of a deposit or other moneys on any transaction in which he is engaged on behalf of his broker-employer, shall pay over the deposit to the broker;

(iii) a broker shall not commingle the money or other property of his principal with his own;

(iv) every broker shall immediately deposit such moneys, of whatever kind or nature, belonging to others, in a separate custodial or trust fund account maintained by the broker with some bank or recognized depository until the transaction involved is consummated or terminated, at which time the broker shall account for the full amount received. Under no circumstances shall a broker permit any advance payment of funds belonging to others to be deposited in the broker's business or personal account, or to be commingled with any funds he may have on deposit;

(v) every broker shall keep records of all funds deposited therein, which records shall indicate clearly the date and from whom he received money, the date deposited, the dates of withdrawals, and other pertinent information concerning the transaction, and shall show clearly for whose account the money is deposited and to whom the money belongs. All such records and funds shall be subject to inspection by the commission. Such separate custodial or trust fund account shall designate the broker, as trustee, and such account must provide for withdrawal of funds without previous notice. All such records shall be available to the commission,

all these facts together, they were sufficient for the trial court to conclude that Saxe exercised sufficient control over Jones to make him, as a matter of law, its agent. As such, Jones's misrepresentations concerning the soil suitability of the subject property made while he was trying to persuade Appellants to purchase this property, were representations made in the scope of his apparent authority and bound his principal, regardless of whether Saxe knew of the statements. It is clear that Saxe cannot retain the commission earned by the sale and at the same time repudiate Jones's agency or the statements made by him by means of which it obtained that commission. Saxe accepted the commission subject to Jones's fraudulent statement and the maxim *qui sentit commodum sentire debet et onus* (he who receives the advantage ought also to suffer the burden) applies.

The Opinion and Order of Superior Court entering judgment N.O.V. in favor of Saxe is reversed and the judgment entered against Ed Saxe Real Estate, Inc., by the trial court is reinstated.

FLAHERTY, J., did not participate in the consideration or decision of this case.

ZAPPALA, J., concurred in the result.

or its representatives, immediately after proper demand or after written notice given, or upon written notice given to the depository. Also, salespersons are prohibited at 63 P.S. § 455.604(12) from: Accepting a commission or any valuable consideration by a salesperson or associate broker for the performance of any acts specified in this act, from any person, except the licensed real estate broker with whom he is affiliated.