VIRDEN C. BUNTING, Respondent, v. CHARLES CREGLOW, George A. Gibbs, Harry Kelley, and the Upper Michigan Land Company, a Corporation, Appellants.

(168 N. W. 727.)

Contract — action to cancel and rescind — trial de novo — real estate — reconveyance — material facts — misrepresentation as to — reliance on.

1. In a trial *de novo* of an action to cancel and rescind a contract and to obtain a reconveyance of property conveyed thereunder, the evidence is ex-

NOTE.—It is the general rule, subject to many exceptions, that a false representation, although fraudulently made, is not actionable unless relied and acted upon by another, to his injury. The representation must be in regard to a material fact, must be false, and must be acted upon by the other party in ignorance of its falsity, and with a reasonable belief that it is true, as will be seen by an examination of the cases collated in 30 L.R.A.(N.S.) 55, as to whether fraudulent representation by vendor of extent or proportion of land of particular kind included within the tract sold is actionable where purchaser inspects the land.

amined and *held* to establish that there were misrepresentations of material facts upon which the plaintiff relied in entering into the contract.

**Contract to convey real estate — fraudulent representations — quality of land — agreements — warranties — as part of consideration — that purchaser has inspected the land — is not relying upon representations of seller — waiver of claim on account of — rescission on ground of fraud — not precluded from.**

2. Where a contract induced by fraudulent representations concerning the quality of land embraced therein contains a provision to the effect that the purchaser agrees and warrants, as a part of the consideration, that he has inspected the premises, and is not relying upon the representations made by the vendor, and waives any claim on that account, the provision does not preclude a rescission of the contract on the ground of fraud.

**Contract for sale of land — rescission — action seeking — on ground of fraud — necessary defendants joined — all answering — except one nonresident — service on all — land conveyed by plaintiff — as consideration for contract involved — in state — jurisdiction to cancel contract — court has.**

3. In an action brought to rescind a contract on the ground of fraud, all the necessary parties being joined as defendants, all appearing and answering except one who is a nonresident and who was served by publication, the land which plaintiff conveyed as the consideration for the conveyance sought to be set aside being within the state, it is *held* that the court has jurisdiction to rescind the contract and cancel the conveyance made by the plaintiff.

**Rescission of contract — action for — all benefits surrendered — by plaintiff — defendants — all proper parties made — original status between — not restored — answering defendant — cannot complain.**

4. Where, in an action to rescind, the plaintiff has surrendered all the benefits which he received under the contract and has joined all necessary parties as defendants, an answering defendant cannot complain that the original status, as between the defendants themselves, was not completely restored.

Opinion filed June 21, 1918.

Appeal from the District Court of Bowman County, *W. C. Crawford*, J.

Affirmed.

Statement of facts by BIRDZELL, J.

This is an appeal from a judgment entered in the district court of Bowman county, rescinding a contract and canceling a certain conveyance made in pursuance thereof. The action arose on the following

facts: The plaintiff and respondent, Bunting, was the owner of certain lands in Bowman county, North Dakota, and the defendants and appellants have owned or were interested in disposing of certain lands in the upper peninsula of Michigan. Some time prior to March 1, 1915, one Anderson interested the plaintiff in a proposal to exchange his lands in North Dakota for the lands in upper Michigan. By reason of a previous transaction, Anderson knew of Bunting's interest in and slight acquaintance with lands in the upper Michigan peninsula, and, according to Bunting's testimony, he knew also that Bunting would not consider the acquisition of any lands there unless they were good clay lands. It appears further from Bunting's testimony that, during all of the preliminary conversations he had with Anderson concerning the proposed deal, he was assured by Anderson that the lands he was proposing to exchange for the North Dakota lands were of clay soil of good quality and had some timber growing on them. Before making the deal, the plaintiff went to St. Paul, where he met defendant Creglow, with whom he had been acquainted for some time, and Creglow introduced him to defendant Kelley, who accompanied the plaintiff to upper Michigan upon an inspection trip. That was in the winter time, while the lands were covered with snow. The plaintiff and Kelley got off the train at Rudyard, Michigan, a vicinity in which there were a number of improved farms. When the plaintiff was ready to start on his tour of inspection, Kelley stated that he was sick and unable to accompany him, but suggested that the plaintiff go out with one Goltz; Kelley informing the plaintiff, according to plaintiff's testimony, that he could rely upon any statements made by Goltz, as he was a good, straight farmer. According to the plaintiff, the inspection trip was made largely with a view to ascertaining the lay of the land; but this is disputed by the defendants, who state that the inspection was to serve every purpose and to go to satisfy the plaintiff as to the character of the lands for which he was bargaining. However this may be, it appears that the plaintiff was at a disadvantage so far as soil inspection was concerned, for the land was covered with snow and the facilities for making a thorough inspection were lacking. Travel being somewhat difficult, and also owing to excuses made by Goltz, the plaintiff's inspection trip only covered a small portion of the entire tract embraced in the deal and was of short duration. The

plaintiff did not use a spade and none seems to have been provided for the purpose of inspecting the character of the soil. He claims to have relied upon the statements of the defendants in this matter.

As Kelley and the plaintiff were returning to St. Paul, the latter sought to interest him in a proposal to resell the land for him at a profit. After Bunting's return he was approached by Anderson relative to the closing of the deal, and the deal was closed with the understanding that Anderson was to get his commission from the defendants. It appears that the parties Kelley, Briggs, and Creglow, held a contract from the Upper Michigan Land Company for the lands in question, and after this deal was closed by a contract executed by Creglow and Bunting, at Creglow's suggestion, Bunting entered into another contract with the Upper Michigan Land Company in consummation of the same deal. This contract was performed by the plaintiff in deeding his North Dakota lands to defendant Gibbs. Kelley, Gibbs, and Creglow released the obligation of the Upper Michigan Land Company to convey the lands to them, with the understanding that such contracts as they held could be satisfied by the conveyance direct to Bunting, they being likewise released from further obligation to the Upper Michigan Land Company. Bunting executed eight promissory notes of $986 each, payable to the Upper Michigan Land Company, and paid $1,912 in cash. Gibbs paid Bunting $688 in cash.

About three or four months after the contract was performed, as above indicated, Bunting returned to Michigan, made a careful inspection of the lands, and found that the soil was not clay soil, but that the entire tract was a barren waste of sand. Upon his return to St. Paul, he took the matter up with defendant Creglow, who, according to his (plaintiff's) testimony, said: "I am confident that the boys have given you a dirty deal and I will do my best to see that it is righted." Much of the testimony referred to above as that of plaintiff Bunting is disputed by the defendants, but, in so far as the case turns upon disputed facts, our conclusions will be set forth in the opinion.

*Feetham & Feetham* and *Christopherson & Christopherson,* for appellants.

The burden of proving that the agent had authority to make the

representations claimed was upon plaintiff. Corey v. Hunter, 10 N. D. 5; Fargo v. Cravens, 9 S. D. 640, 70 N. W. 1053.

The burden of proof of agency rests upon him who affirms it, and the proof must be clear and specific. 1 Am. & Eng. Enc. Law, 968.

Agency may be created and authority may be conferred by a precedent authorization or subsequent ratification. Comp. Laws 1913, § 6328.

"An oral authorization is sufficient for any purpose except that an authority to enter in a contract required by law to be in writing can only be given by an instrument in writing." Comp. Laws 1918, § 6330.

In this state all contracts for the sale of lands must be in writing. The agent had no written contract to act for defendants, and therefore he could not be defendants' agent to sell, clothed with proper authority. He had no ostensible or implied authority to make representations concerning the land, and there has been no ratification of the acts of the so-called agent by defendants. Union Trust Co. v. Phillips, 63 N. W. 903.

"A ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified." Comp. Laws 1913, § 6331.

An agency cannot be established by any act or statement of the pretended agent. Gordon v. Trust Co. 6 N. D. 454.

"Not only in sales of lands or of personal property, but also in other business transactions, the law allows a party some latitude in making commendatory statements to induce another to deal with him, and holds that the other cannot complain if he is imprudent enough to act upon them, instead of investigating for himself and exercising his own judgment. Such expressions cannot be made the basis of a charge of fraud. . . . When nothing is said or done to prevent the other party from making an examination or investigation for himself."

"*Simplex commendatio non obligat.*" 14 Am. & Eng. Enc. Law, 118.

Whether plaintiff made a good or a bad contract is in no way controlling in this case. 24 Am. & Eng. Enc. Law, 611.

"Where there has been an independent examination of the land, on the part of the purchaser, there is no ground for an action based upon

deceit." Crocker v. Manley, 164 Ill. 282, 56 Am. Rep. 196; 14 Am. & Eng. Enc. Law, 111, 612.

"Granting relief against an executed contract has been said to be an exertion of the most extraordinary power of a court of equity." Atlantic Delaine Co. v. James, 94 U. S. 214; Morse Arms Mfg. Co. v. Winchester Repeating Arms Co. 33 Fed. 184.

"It is no part of the duty of a court of equity to relieve a party from a foolish bargain after it has been fully consummated." Rockafellow v. Baker, 41 Pa. 319, 80 Am. Dec. 624.

Plaintiff expressly agrees in his contract that he has purchased the land, not relying upon any statements or representations made to him, but upon his own investigation and examination of the land, and he is estopped to deny these statements in his written contract. 11 Am. & Eng. Enc. Law, 387.

"A bill to cancel a deed conveying land is not a suit affecting title to land within the meaning of statutes requiring such suits to be instituted in the county wherein the land lies." 18 Enc. Pl. & Pr. 790; Bullit v. E. Kentucky Land Co. 99 Ky. 324; Kendrick v. Wheatley, 3 Dana, 34; Parish v. Oldham, 3 J. J. Marsh. 344.

"A court can acquire no jurisdiction by publication, to render a personal judgment against a nonresident defendant who makes no appearance in the action." 17 Enc. Pl. & Pr. 39, 116; Pennoyer v. Neff, 95 U. S. 714.

This nonresident defendant was a necessary party defendant. The rule that the absence of parties affected by the relief sought is fatal does not yield to the statute regulating demurrers to an ordinary complaint. Osterhoudt v. Board of Supervisors, 98 N. Y. 239; McDougall v. New Richmond Co. 125 Wis. 121; O'Connor v. Irvine, 74 Cal. 435; 15 Enc. Pl. & Pr. 688.

This rule is so strict that the appellate court will reverse on this ground, though the point was not raised on the trial. Hoe v. Wilson, 9 Wall. 501.

*Scow & Young,* for respondent.

This transaction on the part of defendants was conducted by an agent. The acts and statements of this agent amounted to a fraud upon the plaintiff. The defendants, as principals, are bound by the

fraud of their agent. 1 L.R.A. 144, note; 31 Cyc. 1583; 2 L.R.A. 209, note; 10 R. C. L. 325.

"The general rule is that one, whether a corporation or an individual, who seeks to enforce and derive a benefit from a contract undertaken to be made in its or his behalf by another, must adopt not only the entire contract, but the means by which the contract was procured." Union Trust Co. v. Philips (S. D.) 63 N. W. 903; Stackpole v. Hancock, — Fla. —, 45 L.R.A. 814.

When a vendor refers a vendee to a third person for information, he is bound by the statements of such third person. 12 R. C. L. 403; Barron v. Meyers (Mich.) 109 N. W. 862.

One who is induced by fraudulent representations of an agent acting within the scope of his authority to enter into a contract for the purchase of land, with such agent's principal, may rescind on discovering the fraud. Ballard v. Lyon (Minn.) 131 N. W. 320; McKinnon v. Vollmer (Wis.) 6 L.R.A. 121; Gunher v. Ullrich (Wis.) 52 N. W. 88; Craig v. Ward, 1 Abb. App. Dec. 454, 2 Keyes, 287; 2 Transc. App. 281; 3 Abb. Pr. N. S. 235, affirming 36 Barb. 377; 20 Cyc. 85, note; 31 Cyc. 1289.

This is a clear case of ratification by adopting the contract made by the agent and attempting to reap all its benefits. Clark v. Ralls, Iowa, 24 N. W.

The liability of defendants is just the same as it would be had they authorized specifically every act and statement of their agent. Law v. Grant, 75 Wis. 548; McKinnon v. Vollmar, 75 Wis. 83, 6 L.R.A. 121, 17 Am. St. Rep. 178, 43 N. W. 800; Gunther v. Ullrich, 82 Wis. 222, 33 Am. St. Rep. 32, 52 N. W. 88; Fintel v. Cook, 88 Wis. 487, 60 N. W. 788; Matteson v. Rice (Wis.) 92 N. W. 1109.

The plaintiff did not get the land he was induced to believe he was obtaining. Natural justice, in such case, demands that defendants should restore to him the property taken from him, and equity will compel restoration. Sweezey v. Collins, 36 Iowa, 589; Wilcox v. University, 32 Iowa, 367; Seeberger v. Hobert, 55 Iowa, 756, 8 N. W. 482; Mohler v. Garder, 73 Iowa, 582, 53 N. W. 647; Hood v. Smith (Iowa) 44 N. W. 903.

Representations may be innocently made; yet if made as positive statements of fact, and not as mere opinions, and relied upon by the

other party, to his detriment and to the extent that he acts upon them, believing them to be true, when in fact they are false, equity will afford relief. Mohler v. Garder (Iowa) 35 N. W. 647; Groppengiesser v. Lake, 36 Pac. 1036; Smith v. Bricker, 53 N. W. 250; Brett v. Van Auken, 68 N. W. 891.

Where a statement of value is made as a statement of fact, and accepted as such, it is actionable. Hetland v. Bilstad, 118 N. W. 422; 35 L.R.A. 430, note; 12 R. C. L. 270–280.

It is the duty of a vendor to disclose latent defects, of which he has knowledge. His concealment and failure to do so amount to a fraud. Liland v. Tweto, 19 N. D. 568.

One who actively conceals the condition of a mine, thwarts investigation, and misrepresents the significance of apparent conditions, cannot take advantage of the rule that the law will not aid a purchaser who fails to avail himself of the ordinary means of information. Tooker v. Alston, 16 L.R.A.(N.S.) 818, 159 Fed. 599; Hays v. Meyers, 17 L.R.A.(N.S.) 284, 32 Ky. L. Rep. 832; Gruber v. Baker (Nev.) 9 L.R.A. 302; Dirks Trust & Title Co. v. Koch (S. D.) 143 N. W. 952; Weikel v. Stevens, 142 Ky. 513, 34 L.R.A.(N.S.) 1035; Friday v. Parkhurst, 13 Wash. 439, 43 Pac. 362.

A purchaser is not bound to make an investigation as to the truth or falsity of the representations, but can rely absolutely upon them. Fargo Gas & Coke Co. v. Fargo Gas & E. Co. 4 N. D. 219; Barron v. Meyers (Mich.) 109 N. W. 882; Mannel v. Schafer (Wis.) 115 N. W. 801; Knapp v. Schemmel & Armstrong, 124 N. W. 309.

Acts done in affirmance of the contract can amount to a waiver of the fraud only where they are done with full knowledge of the fraud and of all material facts, and with the intention clearly manifested, of abiding by the contract and waiving all right to recover for the deception. Bisch v. Von Lillienthal, 34 Wis. 350; Rhoda v. Annis, 75 Me. 17, 46 Am. Rep. 354; Oswald v. McGehee, 28 Miss. 340; Jackson v. Armstrong, 50 Mich. 65; Gauldin v. Shehee, 37 L.R.A. 611, note; Brett v. Van Auken (Iowa) 69 N. W. 891; Circle v. Potter (Kan.) 111 Pac. 479; 20 Cyc. 93.

"There can be no equitable estoppel short of one arising from actual contract, where the truth is known to both parties or where they both have equal means of knowledge." In this case defendants possessed

knowledge of facts, not open to view, as to the true condition of the land. The plaintiff did not know of these things and they were concealed and withheld from him. The parties did not occupy the same position in this respect and therefore plaintiff is not estopped. 16 Cyc. 726, 741.

Suits for specific performance or for rescission of contracts for the sale of land are transitory, and not local. The land here sought is in North Dakota; the court has jurisdiction. Kendrick v. Wheatley, 3 Dana, 34; Bullitt v. Eastern Kentucky Land Co. 99 Ky. 324, 36 S. W. 16; Todd v. Lanchester, 104 Ky. 427, 47 S. E. 336.

BIRDZELL, J. (after stating the facts). The trial court found that Anderson was the agent of the defendants Creglow, Gibbs, and Kelley, and that they were consequently bound by the representations that he made. The appellants' counsel challenges this finding and contends that, under the facts disclosed by the record and the testimony given, the plaintiff has not sustained the burden of proving the agency to exist. In answer to this contention it need only be stated that the record clearly establishes that Anderson negotiated the deal, and it makes no difference whether he was originally authorized by the defendants to sell the land or not. Having taken the benefits of the contract negotiated by Anderson, they must be held to have assumed its burdens and to be bound by whatever representations were made inducing the plaintiff to contract. This proposition is so elementary that the citation of authorities is unnecessary. However, it is contended, in opposition to the principle stated, that, under §§ 6330 and 6331 of the Compiled Laws of 1913, an oral ratification is not sufficient. Section 6330 provides that an oral authorization (of an agent) is sufficient for any purpose, except that an authority to enter into a contract, required by law to be in writing, can only be given by an instrument in writing. Section 6331 provides that a ratification can be made only in the manner that would be necessary to confer original authority for the "act ratified or, when an oral authorization would suffice by accepting or retaining the benefit of the act with notice thereof." Counsel argues that these statutes are merely declaratory of the pre-existing common law. In this respect counsel are clearly in error, for it has long been well established that the provisions of the Statute

of Frauds, requiring contracts for the sale of an interest in lands to be in writing, have no effect whatsoever upon an agency contract, and that any authorization of an agent which was sufficient under the common law would be sufficient to authorize him to execute a contract binding his principal for the sale of the lands. This rule is distinctly changed by § 6330, above referred to. But we need not determine in this case whether the ratification is sufficient to hold the defendants bound to their contract. This is not an action to enforce an executory contract for the sale of the lands. The contract is executed and the action is one to escape its consequences on the ground that it was induced by fraudulent representations. The Statute of Frauds has no application to an executed contract. It is only when an attempt is made to hold one bound to a contract within its terms that its provisions are applicable. Brown, Stat. Fr. §§ 116, 117. If counsels' position were correct, it is clear that the Statute of Frauds would become a most convenient instrument for the perpetration of fraud, instead of a means for its prevention.

It is next argued that none of the defendants made any statements or representations which would justify a rescission of the contract. This argument depends, in part at least, upon the effect of the ratification of Anderson's agency. The effect of that ratification being as above indicated, this argument does not go far enough, because the defendants are bound by Anderson's representations regardless of any representations that might or might not have been made by them personally.

It is next urged that, even assuming that the representations were made as claimed, the evidence of reliance by the plaintiff upon them was not sufficiently convincing to justify a rescission of the completed transaction, and also that the plaintiff is estopped by his own representations of nonreliance in the written contract. There are some circumstances tending to indicate that the plaintiff relied upon his own inspection of the land to determine its quality, such as the fact that he had asked Creglow to warrant that the lands were clay, and Creglow had refused, and that he had gone to upper Michigan and investigated the lands; but these are explained. He says that the investigation was for the purpose of determining the lay of the land, and not its quality; and the fact that the inspection was made during the winter season when

the land was covered with snow, together with the extreme care which was apparently exercised to prevent the plaintiff from obtaining a correct impression as to the condition of the soil, tends to destroy the effect of the inspection by the plaintiff, and to indicate that he was in fact relying upon the subtle representations of Anderson and his coagents in the deal. We are impressed that the findings of the trial court upon this question are substantiated by the circumstances disclosed by the record, and by the weight of the testimony.

In the contract which plaintiff signed with the Upper Michigan Land Company, the following clause appears: "The said party of the second part hereby agrees and warrants, as a part of the consideration of the sale to him of said land, that he has inspected said premises, on his own behalf, and that in making this purchase and in executing this contract he is not relying upon any representations made by the party of the first part or by any agent or servant thereof, and explicitly waives any claim on that account." The presence of the foregoing clause in the contract tends rather to cast suspicion upon the transaction than to stamp it with the seal of fairness and good faith. It does not strengthen the legal position of the vendors of the land to so express the doctrine of *caveat emptor* as to make it appear that the purchaser warrants as a part of the consideration that he has inspected the premises. In so far as the above provision may amount to a release defeating the legal consequences of actual fraud before its presence has become known to the party signing it, it may properly be regarded as of no effect in law. Furthermore, it is not apparent how the answering defendants can derive any benefits from this clause in the contract with the Upper Michigan Land Company. It is not claimed that there was any such clause in the first contract that was executed.

It is next claimed that the Upper Michigan Land Company is an indispensable party to a proceeding in which it might be sought to rescind the contract under which the conveyance of plaintiff's land was made, and that the jurisdiction over the answering defendants Creglow, Kelley, and Gibbs, is not sufficient to warrant the exercise of the equitable powers of the court to secure the complete undoing of the transaction. If the appellants' contention were correct in this respect, it would follow that the state courts would be powerless to grant relief

in any case where the defendant is a nonresident, even if there were but two parties to the transaction, one of which is a nonresident.

The contention altogether overlooks the fact that the powers of the courts of equity are now generally coextensive with the subject-matter of the litigation, and that their judgments and decrees may be given full effect by direct action upon any subject-matter that is within their jurisdiction. Equity jurisdiction can no longer be said to be exercised strictly *in personam*. It is at least quasi *in rem*. See Pom. Eq. Jur. §§ 135, 171, 428, 1317, and 1318. It appears that all necessary parties have been made parties defendant; that three of the defendants appeared voluntarily; and there is a finding, not controverted, that the Upper Michigan Land Company was "duly served." The question raised, therefore, must be determined not upon the basis that the foreign corporation, which was a party to the contract, was not made a party to the action; but rather upon the basis that all of the parties to the contract were joined as parties defendant, that the court had personal jurisdiction over three of the defendants and jurisdiction over the fourth defendant by publication in pursuance of the order entered to that effect.

In the existing state of the record as to parties, no question is raised as to the right of the plaintiff to enforce the judgment as a personal judgment against a nonresident party served only by publication. The doctrine of Pennoyer v. Neff. 95 U. S. 714, 24 L. ed. 565, is consequently not applicable. Furthermore, the plaintiff is the party prejudiced by the inability of the court to render a judgment binding as a personal judgment or decree against the nonappearing defendant rather than such defendant.

Neither does the record present a case strictly analogous to that of Shields v. Barrow, 17 How. 130, 15 L. ed. 158; for, as above indicated, all of the parties to this contract have been made parties defendant, which was not true in the case of Shields v. Barrow. In the opinion in that case, Mr. Justice Curtis indicated that the rule applied as to parties would not necessarily be fatal to the action if the indispensable parties were constructively before the court. In referring to the Act of Congress of February 28, 1839, regulating the equity practice of the circuit court of the United States, he quoted with approval the previous decision of the court in Mallow v. Hinde, 12 Wheat. 198, 6

L. ed. 600, dealing with the question as follows: "The act says it shall be lawful for the court to entertain jurisdiction; but, as is observed by this court in Mallow v. Hinde, supra, 198, when speaking of a case where indispensable parties were not before the court, 'We do not put this case upon the ground of jurisdiction, but upon a much broader ground, which must equally apply to all courts of equity, whatever may be their structure as to jurisdictions; we put it on the ground that no court can adjudicate directly upon a person's right, without the party being either *actually or constructively before the court.*'"

In the case at bar, all of the parties to the contract have been made defendants, and all are either actually or constructively before the court. Not being concerned in this proceeding with any question as to the plaintiff's ability to make the decree wholly effective in so far as it may be favorable to him, it is clear that the court had jurisdiction of the subject-matter of the action and sufficient jurisdiction over all of the parties to enter an appropriate judgment. The judgment was in every way proper in that it required the plaintiff to surrender all the benefits that he had received under the contract, and to assign it so that the defendants would be free to adjust their rights as between themselves. If the defendants, or any of them, do not care to come in and assert their interest in the contract thus assigned, or the rights that may have been theirs *inter sese,* they are in no position to complain of the decree. It is not enough that one or more defendants say that the judgment is wrong because the original status has not been completely restored. They must, at the same time, show wherein they are prejudiced. It is not claimed that the plaintiff has not completely surrendered the benefits that he had received; nor is it contended that the restoration is not complete in so far as he is able to make it complete. If the nonappearing defendant is a bona fide assignee of Creglow's contract, it has not availed itself of its opportunity to show such fact; and if the appearing defendants are prejudiced by reason of payments made to the Upper Michigan Land Company to induce it to contract with Bunting, they should rather be required to establish the exact extent of the prejudice than permitted to use the mere possibility

of prejudice as a shield to protect them against the consequences of their own fraud.

The judgment is in all things affirmed.

ROBINSON, J. (concurring). Defendants appeal from a judgment for the rescission of a land trade on the ground that it was obtained by fraud and false representations. Under the statute a party may rescind a contract when his consent was given by mistake or obtained by fraud or undue influence. In this case it appears beyond all question that the defendants Creglow, Gibbs, and Kelley contrived to "gold brick" the plaintiff. By gross fraud, misrepresentations, they induced him to convey to Gibbs 1,120 acres of good land in Bowman county at $35 an acre, amounting to $39,200, in exchange for 2,320 acres of white sand land in twp. 45, range 4, of Upper Michigan peninsula. They claimed to have a contract with the Upper Michigan Land Company to sell them the land at $20 an acre, amounting to $46,400, and that on the contract (which plaintiff had never seen), the balance due was $7,888. This balance the plaintiff assumed and they paid him the difference, $688.

The original contract between the plaintiff and the defendant was dated February 10, 1915, and signed by Charles Creglow and the plaintiff. Creglow agreed to assign to plaintiff a contract for the sale of the land by the Upper Michigan Land Company, subject to the payment of $7,888, which plaintiff assumed. Creglow agreed to give plaintiff a copy of his contract with the Michigan Land Company, but afterwards, when a copy was demanded, Creglow claimed that it in-cluded other lands. Hence, to replace the first contract he volunteered to give plaintiff a contract direct from the Michigan Land Company. The new contract was given and dated March 1, 1915, and it contained this clause: "The party of the second part (the plaintiff) agrees and warrants that he has inspected the premises, and that in making the purchase and agreement he is not relying upon any representations made by the first party or any agent or servant thereof, and expressly waives any claim on that account."

As such a clause is never found in an honest contract, it is strong evidence of the alleged fraud. The party who dictated that clause knew that misrepresentations had been made, and desired to hedge

against the same. To put such a clause in a contract is like an ostrich putting his head in the sand to hide its body.

In the brief of counsel for appellant, it is said that to induce the Michigan Land Company to contract with the plaintiff to convey the land to him in consideration of $9,860, Gibbs, Kelley, and Creglow must either have paid or agreed to pay the difference between that and $46,400. That argument assumes that the judges are very simple and easily hoodwinked, but we conceive it quite possible and even probable that Gibbs, Kelley, and Creglow were part of the Michigan Land Company, or that they stood in with it, and that they never made a good-faith contract to purchase the land for $46,400. Such a representation was merely a bait for suckers like the plaintiff, but Gibbs and Company were not suckers. They never agreed to purchase a worthless lot of white sand at $46,400. These three real defendants employed W. G. Anderson, of St. Paul, to aid them in making the contract. He kept after the plaintiff week after week for three months, assuring him that the Michigan land had a good clay subsoil, and that said lands were fully as good as land near Sault Ste. Marie, which the plaintiff had seen and knew to be well worth $25 to $30 an acre.

In February, 1915, before making the trade, one of the defendants took plaintiff to see the land, and he passed an hour in trying to go over the land on snow shoes, but in June, 1915, he went over the land with the county surveyor, and they passed three days in digging holes into each 40-acre tract. They dug 200 holes and found nothing only white sand. The testimony of the surveyor is absolutely conclusive, and it shows that the land was worthless. It is needless to cite and to argue the evidence. The case is too plain. When it appears that a party has made a contract which no person of common sense would make if correctly informed, the fair presumption is that he was induced to make such contract by fraud and misrepresentations. The plaintiff has fully complied with all the conditions necessary to a rescission of the deal. Really it does seem that counsel should know better than to appeal such a case as this.

Judgment affirmed.